IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ERIC GUNTHER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CAPITAL ONE, N.A. d/b/a CAPITAL ONE BANK and CAPITAL ONE FINANCIAL CORPORATION,<br><br>Defendants. | Civil Action No. 09-2966-ADS-AKT<br><br>Arthur D. Spatt, USDJ<br>A. Kathleen Tomlinson, USMJ |

**MEMORANDUM OF LAW IN OPPOSITION TO CAPITAL ONE, N.A.'S MOTION TO DISMISS CLASS ACTION COMPLAINT FOR FAILURE TO STATE CLAIM**

# TABLE OF CONTENTS

INTRODUCTION ........ 1

PROCEDURAL HISTORY ........ 3

STATEMENT OF FACTS ........ 3

STANDARD OF REVIEW ........ 6

ARGUMENT ........ 7

I. PLAINTIFFS STATES A CLAIM FOR BREACH OF CONTRACT, BOTH CONSIDERING TISA AND WITHOUT CONSIDERING TISA ........ 7

A. PLAINTIFF'S BREACH OF CONTRACT CLAIM IS NOT LIMITED TO TISA VIOLATIONS ........ 8

B. PLAINTIFF'S DEPOSIT AGREEMENT EXPRESSLY INCORPORATES FEDERAL LAWS ........ 11

C. DISCLOSURES MANDATED BY THE FEDERAL BANKING LAWS ARE INCORPORATED INTO CUSTOMER AGREEMENTS OF FEDERALLY-CHARTERED BANKS ........ 13

II. PLAINTIFF STATES A CLAIM FOR VIOLATION OF NYGBL §349 FOR DECEPTIVE PRACTICES THAT OCCURRED IN NEW YORK ........ 15

A. THERE IS NO NEW YORK RESIDENCY REQUIREMENT FOR NYGBL §349 ........ 15

B. PLAINTIFF SUFFERED HARM FROM DEFENDANTS' SERVICES FURNISHED IN NEW YORK ........ 17

III. CONA'S CUTPA CHALLENGE IS PREMATURE ........ 18

IV. PLAINTIFF STATES A CLAIM FOR UNJUST ENRICHMENT ........ 20

V. PLAINTIFF'S DECLARATORY JUDGMENT ACT CLAIM IS NOT REDUNDANT ........ 21

CONCLUSION ........ 23

# TABLE OF AUTHORITIES

**CASES:**

*Allied Chemical Int'l Corp. v. Companhia de Navegacao Lloyd Brasileiro*,
775 F.2d 476 (2d Cir. 1985) .......... 8

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009) .......... 7

*Astroworks, Inc. v. Astroexhibit, Inc.*,
257 F. Supp. 2d 609 (S.D.N.Y. 2003) .......... 20

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 7

*Bezuszka v. L.A. Models, Inc.*,
2006 U.S. Dist. LEXIS 13620 (S.D.N.Y. Mar. 24, 2006) .......... 16, 17

*Broder v. Cablevision Sys. Corp.*,
329 F. Supp. 2d 551 (S.D.N.Y. 2004) .......... 15

*Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*,
182 N.J. 210 (N.J. 2005) .......... 10

*Cassese v. Washington Mutual, Inc.*,
255 F.R.D. 89 (E.D.N.Y. 2008) .......... 19

*City of New York v. Beretta U.S.A. Corp.*,
524 F.3d 384 (2d Cir. 2008) .......... 7

*Clark v. State Farm Mut. Auto Ins. Co.*,
231 F.R.D. 405 (C.D. Cal. 2005) .......... 19

*Dalton v. Educ. Testing Serv.*,
87 N.Y.2d 384 (N.Y. 1995) .......... 10

*Davis v. United Air Lines, Inc.*,
575 F. Supp. 677 (E.D.N.Y 1983) .......... 15

*Diversified Carting, Inc. v. City of New York*,
423 F. Supp. 2d 85 (S.D.N.Y. 2005) .......... 20

*Farinella v. PayPal, Inc.*,
611 F. Supp. 2d 250 (E.D.N.Y. 2009) .......... 19

*Gionis v. Javitch, Block & Rathbone*,
405 F. Supp. 2d 856 (S.D. Ohio 2005) .......... 19

*Goshen v. Mutual Life Ins. Co. of N.Y.*,
98 N.Y.2d 314 (N.Y. 2002) .......... 1, 15

*Grochowski v. Phoenix Constr.*,
318 F.3d 80 (2d Cir. 2003) .......... 15

*Holmes v. Poskanzer,*
2009 U.S. App. LEXIS 15976 (2d Cir. July 21, 2009) .......... 7

*India.com, Inc. v. Dalal*,
324 Fed. Appx. 59 (2d Cir. 2009) .......... 10

*Lamothe v. Town of Oyster Bay*,
2009 U.S. Dist. LEXIS 59402 (E.D.N.Y. July 10, 2009) .......... 6

*MCI Worldcom Communs., Inc. v. LD Wholesale Inc.*,
2002 U.S. Dist. LEXIS 12426 (S.D.N.Y. July 8, 2002) .......... 20

*Miller v. Wolpoff & Abramson, L.L.P.*,
321 F.3d 292 (2d Cir. 2003) .......... 6

*Mountz v. Global Vision Prods., Inc.*,
770 N.Y.S.2d 603 (Sup. Ct., N.Y. Co. 2003) .......... 16

*New York State Law Officers Union v. Andreucci*,
433 F.3d 320 (2d Cir. 2006) .......... 12

*People v. County Bank of Rehoboth Beach, Del.*,
2007 NY Slip Op 9158 (N.Y. App. Div. 3d Dep't 2007) .......... 18

*People v. Telehublink Corp.*,
301 A.D.2d 1006 (N.Y. App. Div. 3d Dep't 2003) .......... 16

*Shelley v. AmSouth Bank*,
2000 U.S. Dist. LEXIS 11428 (S.D. Ala. July 24, 2000) .......... 14

*Van Slyke v. Capital One Bank*,
503 F. Supp. 2d 1353 (N.D. Cal. 2007) .......... 21

**STATUTES AND RULES:**

Truth in Savings Act ("TISA"), 12 U.S.C. §4301 *et seq.* ........ *passim*

Declaratory Judgment Act, 28 U.S.C. §2201 ........ 21

Fed. R. Civ. P. 8 ........ 2, 20

Fed. R. Civ. P. 12 ........ 6

Fed. R. Civ. P. 15 ........ 23

12 C.F.R. §230.1, *et seq.* (Regulation DD) ........ *passim*

12 C.F.R. §7.4007 ........ 14

Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a, *et seq*. ........ 1, 18, 19, 21

New Jersey Consumer Fraud Act, N.J.S.A. §§ 56:8-1, *et seq*. ........ 1, 18, 21

New York General Business Law §349 ........ 1, 15, 16, 17, 18, 21

**MISCELLANEOUS:**

Federal Deposit Insurance Corporation,
FDIC Study of Overdraft Programs (November 2008) ........ 17, 18

Government Accountability Office,
*BANK FEES [,] Federal Regulators Could Better Ensure That Consumers Have Better Disclosure Documents Prior to Opening Checking or Savings Accounts* (January 2008) ........ 22

Office of the Comptroller of the Currency, Federal Reserve System,
Federal Deposit Insurance Corporation, National Credit Union Administration,
*Joint Guidance on Overdraft Protection Programs* (Feb. 16, 2005) ........ 5, 6, 17

Restatement (Second) of Contracts §205 ........ 11

Plaintiff Eric Gunther ("Plaintiff"), respectfully submits this Memorandum of Law and the supporting Declaration of Joseph S. Tusa in opposition to the motion to dismiss Counts I, II, IV, V and VI of the *Class Action Complaint* ("CAC") pursuant to Rule 12(b) of the Federal Rules of Civil Procedure (the "Federal Rules") filed by defendant Capital One, N.A. d/b/a Capital One Bank ("CONA" and "CONA Br."), and the motion to dismiss filed by defendant Capital One Financial ("COF") to the extent it incorporates CONA's arguments. Plaintiff separately opposes the COF's motion to dismiss based upon its theories of agency liability.

## INTRODUCTION

CONA has not moved to dismiss Plaintiff's claim for violations of the New Jersey Consumer Fraud Act ("NJCFA"), Count III of the CAC. Nor does CONA's motion dispute any of the conduct that allegedly breached its deposit agreement with Plaintiff and that constitutes false, deceptive, misleading and unconscionable methods, acts, practices and conduct in violation of the New York, New Jersey and Connecticut consumer protection statutes.

The same unchallenged conduct that violates the NJCFA is a violation of New York General Business Law ("NYGBL") §349 and the Connecticut Unfair Trade Practices Act ("CUTPA"). CONA's contention that Plaintiff must be a New York resident to prosecute a claim under NYGLB §349 ignores the plain language of the statute, which deems unlawful deceptive acts or practices "in the **furnishing of any service in this state.**" The focus of the deceptive conduct occurring in New York, and not on the residence of the plaintiff, has been upheld the courts, including New York's highest court. *See Goshen v. Mutual Life Ins. Co. of N.Y.*, 98 N.Y.2d 314 (N.Y. 2002).

CONA's defenses to Plaintiff's breach of contract claims depend on a straw man of their own imagination, namely that a breach of contact claim may only survive if Plaintiff's deposit

agreement incorporates the provisions of the Truth in Savings Act ("TISA"), 12 U.S.C. §4301 *et seq*. and companion regulations issued by the Federal Reserve, Regulation DD, 12 C.F.R. §230.1 *et seq*. This argument fails for multiple reasons. First, Plaintiff has alleged violations of his deposit agreement independent of any violation of TISA or Regulation DD. Second, Plaintiff's deposit agreement expressly incorporates the federal banking laws and regulations. Third, as a federal bank chartered by the Office of Comptroller of the Currency ("OCC"), and additionally regulated by the Federal Reserve and Federal Deposit Insurance Commission ("FDIC"), CONA's deposit agreements are subject to and incorporate the mandatory disclosure provisions of TISA and Regulation DD.

Defendants' arguments for dismissal of Plaintiff's unjust enrichment claim are likewise unfounded. While a party may be limited at the later stages of a case to simultaneously proceed on both contract and unjust enrichment claims, at this early stage of a case, pursuant to the federal alternative pleading rules, a plaintiff may plead and sustain both claims. *See* Fed. R. Civ. P. 8(d)(2). The deficiencies of CONA's arguments aside, since COF argues that it is not party to any contract with Plaintiff, and since it retains the benefit of the disputed fees paid by Plaintiff, COF is subject to claim for unjust enrichment.

Lastly, CONA maintains that Plaintiff's Declaratory Judgment Act claim is entirely redundant of the remedies allowed by Plaintiff's other claims. A review of the statutes underlying Plaintiff's claims reveals CONA's contention to be untrue. Moreover, insofar as CONA maintains that the alleged TISA and Regulation DD violations are not a breach of Plaintiff's deposit agreement, that conduct is also not redundant of Plaintiff's contract claim.

**PROCEDURAL HISTORY**

Plaintiff filed this action on July 10, 2009. *Docket No. 1*. Following two consented adjournments extending their time to move or answer, in lieu of serving an answer, CONA filed this instant motion to dismiss. COF has separately moved to dismiss based upon agency and alter ego theories, which have not been pled or proffered by Plaintiff.

The parties have not yet exchanged the disclosures mandated by Federal Rule 26(a). Plaintiff served his first request for documents and interrogatory responses on September 21, 2009. Magistrate Judge Tomlinson has ordered the parties to appeal for an initial conference, pursuant to Federal Rule 16, on November 14, 2009. *Docket No. 15*.

**STATEMENT OF FACTS**

In December 2006, COF completed an acquisition New York-headquartered North Fork Bancorporation, Inc. ("NFBI"). CAC ¶¶ 1, 19, 20. Upon completion of that acquisition, COF merged NFBI's retail banking subsidiaries, North Fork Bank and Superior Savings of New England, NA ("Superior Bank"), into CONA. CAC ¶21. Earlier that year, CONA converted from a Virginia state-chartered bank to a nationally-chartered bank. CAC ¶18. Beginning in October 2006, Plaintiff maintained a checking account at North Fork Bank. CAC ¶¶ 2, 16. Plaintiff's account was acquired by Defendants in connection with the NFBI acquisition.

Until March 2008, CONA and COF continued to operate their retail and deposit banking operations in New York, New Jersey and Connecticut as North Fork Bank and Superior Bank. CAC ¶22. On March 10, 2008, Defendants announced the re-branding of more than 350 former North Fork Bank and Superior Bank branches under the "Capital One Bank" name. CAC ¶¶ 3, 22-25. Omitted from those press releases was the fact that as of March 10, 2009, CONA and COF increased six (6) "Miscellaneous Account Fees" imposed and assessed on its North Fork

Bank and Superior Bank deposit account holders. CAC ¶¶ 3, 4, 26, 27. Also since the NFBI acquisition, Defendant began imposing and assessing other non-increased "Miscellaneous Account Fees" on former NFBI customers in New York New Jersey and Connecticut. CAC ¶¶ 4, 28 (reproducing CONA list of "Miscellaneous Account Fees"). Included among these improper fees that were imposed, assessed, charged and set-off against Plaintiff's checking account were Undeliverable Mail Fees, Not-Sufficient Funds ("NSF") / Overdraft / Uncollected Fees and Foreign ATM Fees. CAC ¶¶ 5, 6, 8, 29, 31, 33.

After Defendants acquired North Fork Bank, but not before, Plaintiff was assessed and charged monthly Undeliverable Mail Fees, each in the amount of $15, for statements mailed by Defendants and received by Plaintiff. CAC ¶¶ 8, 16, 33. Plaintiff has consistently received his CONA account statements at the same address where North Fork Bank previously mailed his statements, which address continues to appear on his CONA bank statements. *Id.*; CAC ¶34. Accordingly, the account statements that were the supposed cause of the Undeliverable Mail Fee were not "undeliverable." *Id.* Plaintiff complained about this fee to Defendants on multiple occasions, who thereafter continued to intentionally and knowingly impose and assess this errant fee against his so-called "free" checking account. CAC ¶35. Finally, in June 2009, a CONA branch employee admitted that CONA was improperly charging Plaintiff the monthly Undeliverable Mail Fee. CAC ¶36. Even then, Defendants made only a partial refund of the Undeliverable Mail Fees Plaintiff paid since November 2007. *Id.*

Plaintiff's deposit agreement, in accordance with TISA and Regulation DD, provided that Plaintiff would be provided with advance notice if the fees subject to this account were increased. CAC ¶¶ 52, 53, 95. Without providing Plaintiff with the requisite advanced mail notice, Defendants imposed at least six (6) increased NSF / Overdraft / Uncollected Fees and

thirteen (13) increased Foreign ATM Fees on Plaintiff. CAC ¶¶ 5, 6, 16, 29, 31. Typifying their disclosure and notice violations, a CONA document entitled "Schedule of Fees and Charges Effective March 10, 2008 [For] New York, New Jersey and Connecticut," declared that: "Fees may be changed at any time." That position violates Plaintiff's deposit agreement, TISA, Regulation DD and other banking regulations. *See* CAC ¶¶ 54.

Plaintiff's checking account was marketed by North Fork Bank as a "Sincerely Free Checking Account." Beginning in April 2008, CONA converted Plaintiff's checking account to a Capital One Bank "Completely Free Checking" account. CAC ¶38. In marketing materials describing its "Completely Free Checking" account, CONA promises that "free means free." *Id.* As alleged by Plaintiff, Defendants' marketing of "free" deposit accounts, while charging the fees disputed in this action is false, misleading, deceptive, unfair and unconscionable, and omits material information about the fees, charges, penalties and interest rates imposed and assessed by Defendants on Plaintiff and Class members. *Id.* The federal banking regulators agree, as described the *Joint Guidance on Overdraft Protection Programs* (the "*Joint Guidance*") issued by the OCC, FDIC, Federal Reserve Board and National Credit Union Administration on February 18, 2005. *See* CAC ¶¶ 45, 47. The same deceptive marketing of "free" deposit accounts violates Plaintiff's deposit agreement, TISA and Regulation DD. CAC ¶56.

The *Joint Guidance* further discusses how the imposition, assessment and set-off of NSF / Overdraft / Uncollected Fees can constitute an unfair, misleading and deceptive practice, and possibly violates federal consumer protection and banking laws. "Where the institution knows that the transaction will trigger an overdraft fee, such as at a proprietary ATM, institutions also may not alert the consumer prior to the completion of the transaction to allow the consumer to

cancel the transaction before the fee is triggered." CAC ¶46 (quoting *Joint Guidance*). *See also* CAC ¶56 (discussing TISA requirement to disclose fee before service is rendered).

Plaintiff alleges injuries that were direct and proximate cause of Defendants' assessment, imposition and set-off of the Undeliverable Mail Fees, NSF / Overdraft / Uncollected Fees and Foreign ATM Fees. CAC ¶¶ 65, 97, 103, 110. Numerous complaints about Defendants, news articles and government reports echo Plaintiff's experiences and injuries. *See* CAC ¶¶ 40-46, 56-64. In fact, the J.D. Power and Associates *2008 Retail Banking Satisfaction Study* (SM) ranked CONA **last** in consumer satisfaction in the Mid-Atlantic region of the country among the 18 banks whose survey results yielded adequate sample sizes to include in the survey. CAC ¶39.

Plaintiff alleges claims, on behalf of himself individually and on behalf of two classes (defined at CAC ¶80) for Breach of Contract (Count I, CAC ¶¶ 91-97), Violation of NYGBL §349 (Count II, CAC ¶¶ 98-104), NJCFA (Count III, CAC ¶¶ 105-111), CUTPA (Count IV, CAC ¶¶ 112-118) and unjust enrichment (Count V, CAC ¶¶ 119-124). Plaintiff further seeks a declaratory judgment (Count VI, CAC ¶¶ 125-126).

## STANDARD OF REVIEW

On a motion to dismiss, courts "must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir.) *cert. denied* 124 S. Ct. 153 (2003) (internal citation omitted). "In considering a Rule 12(b)(6) motion to dismiss, '[t]he appropriate inquiry is not whether a plaintiff is likely to prevail, but whether the plaintiff is entitled to offer evidence to support her claims.'" *Lamothe v. Town of Oyster Bay*, 2009 U.S. Dist. LEXIS 59402, *6-7 (E.D.N.Y. July 10, 2009) (Spatt, J.) (*quoting Palkovic v. Johnson*, 281 Fed. Appx. 63, 66 (2d Cir. 2008) (*citing Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005)). Further, a "Court must

limit its considerations to those facts stated in the complaint, documents that were integral to the claims in the complaint and that the plaintiff relied upon in drafting the pleading, documents attached to the complaint as exhibits, and documents of which the Court may take judicial notice." *Lamothe*, 2009 U.S. Dist. LEXIS 59402 at *7 (*citing Faulkner v. Beer*, 463 F.3d 130, 134-35 (2d Cir. 2006)).

Following the Supreme Court's decisions in *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), this Court is still required to accept the allegations of the complaint as true and draw all factual inferences in the plaintiff's favor. *City of New York v. Beretta U.S.A. Corp.,* 524 F.3d 384, 392 (2d Cir. 2008), *cert. denied,* -- U.S. --, 129 S. Ct. 1579 (2009). *See also Holmes v. Poskanzer,* 2009 U.S. App. LEXIS 15976 (2d Cir. July 21, 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at *3 (*quoting Iqbal, quoting Twombly*).

## ARGUMENT

### I. PLAINTIFF STATES A CLAIM FOR BREACH OF CONTRACT, BOTH CONSIDERING TISA AND WITHOUT CONSIDERING TISA

CONA attempts to conflate Plaintiff's breach of contract claim into a claim solely for violations of TISA and Regulation DD. While true that Defendants did violate TISA and Regulation DD, and Plaintiff's deposit agreement with Defendants' predecessor (North Fork Bank) did expressly incorporate federal banking laws into that agreement, Plaintiff's breach of contract claim is not limited to violations of TISA an Regulation DD. Plaintiff has not alleged a separate claim for violation of TISA.

However, to the extent that Plaintiff's deposit agreement expressly and voluntarily incorporates federal laws, which it does, Plaintiff may sue for breach of the contract by reason of

Defendants' violations of TISA and Regulation DD. It is accepted that parties may voluntarily agree to abide by certain laws, even if they would not otherwise apply. *See Allied Chemical Int'l Corp. v. Companhia de Navegacao Lloyd Brasileiro*, 775 F.2d 476, 483 (2d Cir. 1985). Lastly, the federal banking laws require CONA to make written disclosures conforming to TISA.

Save for its argument that TISA was not and cannot be incorporated into Plaintiff's deposit agreement, which is untrue, CONA does not dispute any of the factual allegations that Plaintiff alleges comprise of a breach of contract. For instance, CONA's motion to dismiss does not dispute that it imposed and assessed Undeliverable Mail Fees for statements that were in fact delivered to Plaintiff by mail, that CONA failed to provide timely notice prior to charging Plaintiff increased Miscellaneous Account Fees, that CONA failed to provide an sufficient notice prior to assessing NSF / Overdraft / Uncollected Fees for ATM transactions and by omitting to state the true interest rates applicable to NSF / Overdraft / Uncollected Fees and loans.

### A. PLAINTIFF'S BREACH OF CONTRACT CLAIM IS NOT LIMITED TO TISA VIOLATIONS

Plaintiff pleads his breach of contract claim in Count I of the CAC. *See* CAC ¶¶ 91-97. More specifically, Paragraph 95 alleges the conduct in breach of Plaintiff's deposit agreement and the implied duties of good faith and fair dealing. As is evident from the text of that paragraph, only a single sub-allegation mentions violations of TISA:

> 95. Defendants breached their contracts with Plaintiff and the Classes by engaging in the methods, acts, practices and conduct described in this Complaint, including the following:
>
> (a). Charging, assessing and imposing new or increased fees on Plaintiff and members of the Increased Fee Class without providing the advance disclosure mandated by Plaintiff's and Class member's contracts and TISA;
>
> (b). Charging, assessing and imposing Undeliverable Mail Fees on Plaintiff and members of the Undeliverable Mail Fee Class when the mail that was the subject of the fee was not undeliverable or when Defendants possessed a correct mailing address;

> (c). Making misleading or inaccurate statements concerning the terms, fees, charges, penalties and interest rates applicable to the contractual terms that apply to Plaintiff's and Class members' deposit accounts;
>
> (d). Failing to provide Plaintiff and Class members who receive periodic statements, with a disclosure at least once every six (6) months that the account holder has the right to request an account schedule containing the terms, fees, charges, penalties and interest rates of the account, and that the account holder may wish to request such an account schedule; and
>
> (e). Charging actual and true interest rates above the interest rates applicable to Class members' deposit accounts, including actual interest rates applicable to NSF / Overdraft / Uncollected Fees and loans.

CAC ¶95.

As discussed in more detail in the next section, Defendants' imposition and assessment of the increased Miscellaneous Account Fees violates the "CHANGES" provision in Plaintiff's deposit agreement, without consideration of TISA or Regulation DD. *See* Declaration of Brian V. Otero ("Otero Decl."), Ex. 1 (attaching agreement). In addition, Defendants' imposition and assessment of the disputed fees by directly debiting the full amount of such fees from Plaintiff's deposit account, when they were not in fact owed, violates the "RIGHT OF SET OFF" and "ADDRESS CHANGES" provisions in Plaintiff's deposit agreement:

> <u>RIGHT OF SET OFF:</u>
>
> <u>If you owe us money</u> and that money is due, we can, to the extent permitted by law, use the fund in any or all of the accounts maintained by you with the Bank or any of its affiliates to satisfy the amount owed. If we exercise this right, we will notify you and inform you of the amount we have taken from your account.
>
> ***
>
> <u>ADDRESS CHANGES</u>:
>
> … <u>In the event mail we attempt to deliver to you is returned</u> as a result of your failure to notify us of your change in address, we may charge a fee to your account in accordance with our "Schedule of Miscellaneous Fees."

*Id*. (emphasis added). *See also Id*. (contract language concerning OVERDRAFTS that fails to fully disclose true effective interest rates for overdraft loans made by Defendants).

Taking the example of the Undeliverable Mail Fees, it has been alleged that those fees were assessed and deducted from Plaintiff's checking account based on a determination by Defendants that Plaintiff's monthly statements were returned as undeliverable. However, that was not true, as Plaintiff received each of those statements by mail. After complaining about this fee on numerous occasions to Defendants' employees, and after at least fifteen (15) months of improperly having the $15 fee set-off and charged against his checking account, a CONA branch employee finally admitted Defendants' error to Plaintiff, but provided him with only a partial refund. *See* CAC ¶¶ 16, 33-36; CAC ¶37 ("Defendants' imposition of Undeliverable Mail Fees on Plaintiff and other Class members during the Class Period, when the mail at issue was not undeliverable, is a breach of contract by Defendants ….").

In addition to their breaches of particular terms in Plaintiff's deposit agreement, Plaintiff further alleges that Defendants' imposition of the disputed fees, either without prior or proper notice, or upon the false satisfaction of conditions (like undeliverable mail), violated the implied duties of good faith and fair dealing. *See* CAC ¶96. Regardless of whether New York, New Jersey or federal law controls, the courts recognize those implied duties for all contracts. *See India.com, Inc. v. Dalal*, 324 Fed. Appx. 59, 61 (2d Cir. 2009) ("As a general matter, a covenant of good faith and fair dealing is implicit in all contracts."); *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (N.Y. 1995) ("Implicit in all contracts is a covenant of good faith and fair dealing in the course of contract performance.") (citations omitted); *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 182 N.J. 210, 224 (N.J. 2005) ("Every party to a contract, including one with an option provision, is bound by a duty of good faith and fair

dealing in both the performance and enforcement of the contract."). *See also* Restatement (Second) of Contracts §205 ("Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.").

Plaintiff states a claim for Defendants' breach of his deposit agreement by assessing, imposing, setting-off and charging the disputed fees, separate and apart of Defendants' violations of TISA and Regulation DD. By imposing the disputed fees without delivering or providing to Plaintiff a prior or proper notice, or upon the false satisfaction of conditions (like undeliverable mail), Defendants have breached both particular provisions in Plaintiff's deposit agreement and the implied duties of good faith and fair dealing.

### B. PLAINTIFF'S DEPOSIT AGREEMENT EXPRESSLY INCORPORATES FEDERAL LAWS

CONA contends that Plaintiff's deposit agreement with its predecessor, North Fork Bank, was "silen[t]" with respect to the incorporation or inclusion of federal laws. *See* CONA Br. at 4. A review of the agreement, annexed as Otero Decl, Ex. 1, demonstrates CONA's contention to be mistaken. That deposit agreement clearly states, under the section heading "CHANGES" that: "These terms and conditions are subject to all applicable state and federal laws and regulations." Insofar at TISA and Regulation DD deal with deposit banking, it is beyond dispute that TISA and Regulation DD are "applicable" to Plaintiff's deposit agreement.

Concerning Defendants right to change the terms and fees applicable to Plaintiff's deposit account, the deposit agreement tracks TISA's and Regulation DD's requirement to provide prior notice. A comparison of Plaintiff's deposit agreement with the requirements of TISA and Regulation DD demonstrates the inclusion of the federal notice requirements:

| | |
|---|---|
| Deposit Agreement (Otero Decl., Ex. 1): | CHANGES:<br><br>"(a) These terms and conditions are subject to all applicable state and federal laws and regulations. We have the right to change or add to these terms and conditions by posting a notice of the change in each of our branches or, if required by law, by mailing a notice of such change to you, prior to it taking effect, at your address as it exists in our records." |
| TISA<br>12 U.S.C. §4305(c): | "Distribution of notice of certain changes. If—<br><br>(1) any change is made in any term or condition which is required to be disclosed in the schedule required under section 264(a) [12 U.S.C. §4303(a)] with respect to any account; and<br><br>(2) the change may reduce the yield or adversely affect any holder of the account, all account holders who may be affected by such change shall be notified and provided with a description of the change by mail at least 30 days before the change takes effect." |
| Regulation DD<br>12 C.F.R. §230.5(a): | Subsequent Disclosures<br><br>"Change in terms -- (1) Advance notice required. A depository institution shall give advance notice to affected consumers of any change in a term required to be disclosed under Sec. 230.4(b) of this part if the change may reduce the annual percentage yield or adversely affect the consumer. The notice shall include the effective date of the change. The notice shall be mailed or delivered at least 30 calendar days before the effective date of the change." |

The above comparison renders the following statement by CONA untenable: "But Plaintiff's contracts with CONA [as successor to North Fork Bank] do not include the notice requirements of TISA." CONA Br. at 4. Even if that were true as a matter of law, the interpretation of the above-referenced contract language raises issues of fact that are inappropriate for resolution on a motion to dismiss. *See New York State Law Officers Union v. Andreucci*, 433 F.3d 320, 331 (2d Cir. 2006) ("Where, as here, the meaning of a particular

contractual provision is ambiguous and the intent of the parties cannot be determined from the contractual language itself, the ambiguity presents a question of fact to be resolved by a jury.").

Regardless of whether Plaintiff's deposit agreement had to include or incorporate the provisions of TISA and Regulation DD, it clearly does. North Fork Bank, and now CONA, expressly and voluntarily included TISA's and Regulation DD's notice requirements in Plaintiff's deposit agreement. Whether viewed as breach of the contract itself, or a breach of TISA's and Regulation DD's notice requirements that were included and incorporated in Plaintiff's agreement, Plaintiff has stated a claim for breach of contract.

### C. DISCLOSURES MANDATED BY THE FEDERAL BANKING LAWS ARE INCORPORATED INTO CUSTOMER AGREEMENTS OF FEDERALLY-CHARTERED BANKS

CONA argues that because some federal statutes and regulations are not incorporated into the regulated entities' consumer agreements, CONA is free to read the requirements of TISA and Regulation DD out of the deposit agreements with their deposit account holders. Even if Plaintiff's contract did not mimic the federal disclosure requirements and expressly incorporate federal banking laws, CONA is still mistaken. Federal banking regulations require compliance with TISA and Regulation DD.

As a federally-chartered national bank, CONA is subject to regulations issued by the OCC, Federal Reserve and FDIC. Regulation DD is issued by the Federal Reserve, which provides in numerous sections that deposit account holders are entitled to the disclosures and protections contained in TISA and Regulation DD. *See* Regulation DD, 12 C.F.R. §230.1(b) ("This part requires depository institutions to provide disclosures so that consumers can make meaningful comparisons among depository institutions."); 2 C.F.R. §230.1(c) (Regulation DD "applies to all depository institutions, except credit unions."); 12 C.F.R. §230.3(a) ("Depository institutions shall make the disclosures required by Sec. 230.4 through 230.6 of this part, as

applicable, clearly and conspicuously, in writing, and in a form the consumer may keep."); 12 C.F.R. §230.6(b) ("The disclosures shall reflect the terms of the legal obligation of the account agreement between the consumer and the depository institution."). OCC regulations also require nationally-chartered banks that accept deposits to comply with federal banking laws, which assuredly include TISA:

> <u>Deposit-taking</u>.
>
> (a) Authority of national banks. A national bank may receive deposits and engage in any activity incidental to receiving deposits, including issuing evidence of accounts, subject to such terms, conditions, and limitations prescribed by the Comptroller of the Currency and <u>any other applicable Federal law</u>.

12 C.F.R. §7.4007 (emphasis added).

It is apparently CONA's position that no part of TISA and Regulation DD can be incorporated or included as part of its deposit agreements. The issue was mostly closely considered in *Shelley v. AmSouth Bank*, 2000 U.S. Dist. LEXIS 11428 (S.D. Ala. July 24, 2000), where the plaintiff alleged both violations of TISA (when it included a private cause of action) and breach of contract for failing to comply with TISA and Regulation DD. *Shelly* recognized that Congress provided the Federal Reserve with authority to implement certain of TISA's disclosure provision. *Id* at *7 (citing 12 U.S.C. §4308). The issue in *Shelly* concerned the disclosure of the order of check processing, which the court held was not among Regulation DD's compulsory disclosure requirement. However, it indicated that had disclosure been required, the plaintiff may have stated a claim for breach of contract. *See Id.* at *21 ("As shown in Part I, TISA and its implementing regulations do not require the defendant to disclose its posting order policy or its per check policy. Accordingly, no such obligation is read into the parties' contract, and the plaintiffs' claim for breach of contract fails."). However, a converse scenario is alleged by Plaintiff, namely that since mandatory TISA and Regulation DD disclosure

provisions are implicated, Defendants failure to comply with TISA and Regulation DD can be a breach of Plaintiff's deposit agreement.

It is noteworthy that the only decisions cited by CONA are outside the deposit banking context. *See Grochowski v. Phoenix Constr.*, 318 F.3d 80 (2d Cir. 2003) (federal construction project wages); *Broder v. Cablevision Sys. Corp.*, 329 F. Supp. 2d 551 (S.D.N.Y. 2004) (cable television); *Davis v. United Air Lines, Inc.*, 575 F. Supp. 677 (E.D.N.Y 1983) (wrongful dismissal of employee with epilepsy). Considered in the proper context of the banking laws, Plaintiff has stated a claim for breach of contract, whether or not TISA and Regulation DD are expressly or impliedly incorporated into Plaintiff's deposit agreement.

## II. PLAINTIFF STATES A CLAIM FOR VIOLATION OF NYGBL §349 FOR DECEPTIVE PRACTICES THAT OCCURRED IN NEW YORK

CONA confuses the requirement that conduct subject to NYGBL §349 occur in New York with a contention that the plaintiff must be a New York resident. *See* CONA Br. at 6. The statute delineates this distinction by making unlawful deceptive acts or practices for services "furnished" in New York. The federal and state courts recognize this distinction, rejecting the residency argument proffered by CONA. As alleged in the CAC and discussed below, Plaintiff was charged some of the disputed fees based on transactions occurring in New York.

### A. THERE IS NO NEW YORK RESIDENCY REQUIREMENT FOR NYGBL §349

NYGBL §349(a) states: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." *See also* CAC ¶100. By misreading both the plain text of the statute, and the case law, CONA errantly argues that only New York residents may bring claims for violations of NYGBL §349.

New York's highest court has explained that the phase "furnishing of any service in this state" refers to the location of "the transaction" that causes injury. *Goshen v. Mutual Life Ins. Co.*

*of N.Y.*, 98 N.Y.2d 314, 324 (N.Y. 2002) ("We conclude that the transaction in which the consumer is deceived must occur in New York."). The Court of Appeals' consideration of this issue did not mention a residency requirement:

> The reference in *section 349(a)* to deceptive practices in "the conduct of any business, trade or commerce or in the furnishing of any service *in this state*" (emphasis added) unambiguously evinces a legislative intent to address commercial misconduct occurring within New York. Indeed, an examination of the text of *General Business Law §349* leads us to conclude that "in this state" can only modify "the conduct of any business, trade or commerce [or] the furnishing of any service." The phrase "deceptive acts or practices" under the statute is not the mere invention of a scheme or marketing strategy, but the actual misrepresentation or omission to a consumer (*see Gaidon,* 94 NY2d 330, 725 N.E.2d 598, 704 N.Y.S.2d 177; *Oswego,* 85 NY2d 20, 647 N.E.2d 741, 623 N.Y.S.2d 529). Thus, to qualify as a prohibited act under the statute, the deception of a consumer must occur in New York.

*Id*. at 324-25 (emphasis and modifications in original).

A number of courts, including *Goshen*, have dealt head-on with CONA's residency argument, and concluded that NYGBL §349 does not require the plaintiff to be a New York resident. *Goshen*, 98 N.Y.2d at 325 ("Lastly, we note that our General Business Law analysis does not turn on the residency of the parties. As both the text of the statute and the history suggest, the intent is to protect consumers in their transactions that take place in New York State."). Subsequent decisions have held likewise. *See People v. Telehublink Corp*., 301 A.D.2d 1006, 1009 (N.Y. App. Div. 3d Dep't 2003) ("Contrary to [the defendant's] argument, however, those statutes [including NYGBL §349], by their terms, do not limit petitioner's authority to seek relief on behalf of parties injured by conduct in New York merely because those parties are nonresidents.") (citing *Goshen*). *Cf. Mountz v. Global Vision Prods., Inc*., 770 N.Y.S.2d 603, 608 (Sup. Ct., N.Y. Co. 2003) (NYGBL §349 requires that "some part of the underlying transaction must occur in New York State") (citing *Goshen*); *Bezuszka v. L.A. Models, Inc*., 2006

U.S. Dist. LEXIS 13620 (S.D.N.Y. Mar. 24, 2006) (NYGBL §349 claim dismissed because the plaintiff did "not allege that any deception occurred in New York") (citing *Goshen*).

CONA's argument that NYGBL §349 is limited to New York State residents is unsupported by the statute and case law, including the opinion of New York's highest court.

## B. PLAINTIFF SUFFERED HARM FROM DEFENDANTS' SERVICES FURNISHED IN NEW YORK

As acknowledged by CONA, Plaintiff does allege that transactions occurring in New York caused him injury. *See* CAC ¶102 ("Plaintiff and Class members residing in New York or who were assessed or charged challenged fees, charges or penalties for conduct that occurred in New York have been injured as a result of Defendants' violations GBL §349(a)."); CAC ¶103 ("Defendants' violations of GBL §349(a) have directly, foreseeably, and proximately caused damages and injury to Plaintiff and Class members residing in New York or who were assessed or charged challenged fees, charges or penalties for conduct that occurred in New York.").

Among the fees challenged by Plaintiff are NSF / Overdraft / Uncollected Fees and Foreign ATM Fees. CAC ¶¶ 16, 29, 31. Among those fees assessed and imposed by Defendants on Plaintiff, some resulted from ATM transactions in New York. These facts are confirmed by document provided by Defendants to Plaintiff. *See* Tusa Decl, Exs. 1, 2.

The statement and notice attached as Tusa Decl., Ex. 2 also demonstrates that Defendants' NSF / Overdraft / Uncollected Fees are often well above those disclosed and permitted by state and federal usury laws. *See Joint Guidance* at 7 ("When overdrafts are paid, credit is extended)"; CAC ¶¶ 45-47 (discussing *Joint Guidance*). Using the same formula used by the FDIC to calculate the effective interest rates for overdraft fees, ((*Fee Charged / Amount Financed) * 365) / Term*), Defendants charged Plaintiff an annual percentage rate of 12,775% to cover his August 12, 2008 $100 ATM withdrawal in New York City, that was repaid by Plaintiff

no later than August 13, 2008. *See FDIC Study of Overdraft Programs*, Executive Summary at v, n.8 (November 2008); Tusa Decl., Ex. 3 (attaching Executive Summary of *FDIC Study*); CAC ¶64 (discussing *FDIC Study*). This interest rate is well above usury limits and can therefore violate NYGBL §349. *See People v. County Bank of Rehoboth Beach, Del.*, 2007 NY Slip Op 9158, *3 (N.Y. App. Div. 3d Dep't 2007).

Plaintiff has alleged injuries derived from deceptive practices and transactions occurring in New York. Aside from its errant contention that NYGBL §349 requires Plaintiff to a New York resident, CONA does not argue any other deficiency in Plaintiff's NYGBL §349 claim.

## III. CONA'S CUTPA CHALLENGE IS PREMATURE

COF's acquisition of NFBI included its North Fork and Superior Bank deposit banking customers in New York, New Jersey and Connecticut. For this reason, the putative class members primarily will reside in these states. *See* CAC ¶82 ("Plaintiff believes that members of the Classes number at least in the of thousands of persons, disbursed throughout New York, New Jersey and Connecticut.").

Due to the similarity of the allegedly unlawful conduct and the nature of injuries suffered by class members, Plaintiff seeks to be certified as the representative for consumers possessing claims under the consumer protection statutes of New Jersey, New York and Connecticut, namely the NJCFA, NYGBL §349 and CUTPA. CONA does not move to dismiss Plaintiff's claim under the NJCFA and its motion directed against NYGBL §349 is premised on a single, errant contention that that statute codifies a New York State residency requirement. *See supra* Section II. In a single sentence, CONA summarily challenges Plaintiff's ability to serve as a class representative for class members possessing CUTPA claims.

Although unspecified, CONA's CUTPA challenge is in the nature of an attack on Plaintiff's Federal Rule 23 adequacy or typicality, arguments that must await Plaintiff's motion for class certification. Those arguments are premature, and inappropriate for disposition at this stage of the case. *Gionis v. Javitch, Block & Rathbone*, 405 F. Supp. 2d 856, 872 (S.D. Ohio 2005) (denying Rule 12(b) motion: "Defendant's arguments are premature. Whether Plaintiff can adequately represent the interests of the putative class members is not currently at issue. This question can be addressed in connection with Plaintiff's motion for class certification once it is filed"); *Clark v. State Farm Mut. Auto Ins. Co.*, 231 F.R.D. 405 (C.D. Cal. 2005) (denying as premature Rule 12(b) motion attacking class allegations).

Moreover, this Court has held numerous times that it can adjudicate the claims of consumers possessing claims under multiple state consumer protection statutes, even when the named plaintiff was not injured in each of those states. *See Cassese v. Washington Mutual, Inc.*, 255 F.R.D. 89, 97 (E.D.N.Y. 2008) (Spatt, J.) ("In addition, the Court finds that the variations present in state common laws of contracts, unjust enrichment, and fraud, as well as potential variations among state consumer protection statutes do not preclude certification."). *See also Farinella v. PayPal, Inc.*, 611 F. Supp. 2d 250, 263 (E.D.N.Y. 2009) ("Here, while some of the class members accepted PayPal's User Agreement in New York, most of them accepted it in another state. The plaintiffs might have overcome this hurdle by alleging violations of the deceptive trade practice statutes of various states (in addition to § 349) in the Complaint, but they failed to do so.") (citing *Cassese*).

While it is premature to engage in the Rule 23 analysis inherent in CONA's CUTPA pleading challenge, Plaintiff possesses standing to represent a class that includes consumers with claims under CUTPA. Should this Court nonetheless grant CONA's motion as to CUTPA, its

order should be limited to Plaintiff individually and without prejudice to class members possessing CUTPA claims.

**IV. PLAINTIFF STATES A CLAIM FOR UNJUST ENRICHMENT**

To the extent that Plaintiff may not recover for breach of contract, he has pled a claim for unjust enrichment, in the alternative. This form of pleading is expressly permitted by the Federal Rules. Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.").

CONA does not challenge the sufficiency of Plaintiff's pleading for his unjust enrichment claim. Rather, it argues that Plaintiff's unjust enrichment claim must be dismissed because Plaintiff has pled a claim for breach of contract. *But see* Fed. R. Civ. P. 8(d)(2). Accordingly, at this stage of the case, the Court may sustain both alternative claims. "Even if an express contract existed, it is well settled that a plaintiff is permitted to plead in the alternative." *Diversified Carting, Inc. v. City of New York*, 423 F. Supp. 2d 85, 98 (S.D.N.Y. 2005) (sustaining claims for both unjust enrichment and breach of contract claims, pending discovery); *see also*, *Astroworks, Inc. v. Astroexhibit, Inc.*, 257 F. Supp. 2d 609, 621 (S.D.N.Y. 2003) (same; "But the fact that he may only *recover* on one claim certainly does not preclude [the plaintiff] from *pleading* both.") (emphasis in original); *MCI Worldcom Communs., Inc. v. LD Wholesale Inc.*, 2002 U.S. Dist. LEXIS 12426, *2-3 (S.D.N.Y. July 8, 2002) ("[Plaintiff's] unjust enrichment cause of action is an alternative pleading to its claim of breach of contract, and 'dismissal of plaintiff's alternative theories at this stage would violate the liberal policy of Rule 8(e)(2) which allows plaintiffs wide "latitude" in framing their right to recover.'") (quoting *Seiden Assoc., Inc. v. ANC Holdings, Inc.*, 754 F. Supp. 37, 40 (S.D.N.Y. 1991)).

Even if this Court were to accept CONA's invitation to disregard Federal Rule 8(d)(2), it argues that its TISA and Regulation DD violations fall outside Plaintiff's deposit contract. *See* CONA Br. at 3-5. CONA's argument, if accepted, renders inapplicable their argument that the same conduct cannot be challenged under claims for breach of contract and unjust enrichment.

CONA's unjust enrichment arguments cannot extend to COF because contrary to CONA's acknowledgement of a contractual relationship with Plaintiff, COF claims not to be party of a contract with Plaintiff. However, COF has received and retains the benefit of the disputed fees paid by Plaintiff. *See* CAC ¶¶ 65, 67, 68, 121, 122. *See Van Slyke v. Capital One Bank*, 503 F. Supp. 2d 1353, 1369 (N.D. Cal. 2007) (alleged defense that COF subsidiary was contracting party did require dismissal of common law claims against COF). Plaintiff has therefore stated unjust enrichment claims against both CONA and COF.

## V. PLAINTIFF'S DECLARATORY JUDGMENT ACT CLAIM IS NOT REDUNDANT

Pursuant to the Declaratory Judgment Act, "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. §2201(a). CONA suggests that Plaintiff's federal Declaratory Judgment Act claim must be dismissed because it is "redundant" of Plaintiff's state law claims. This argument suffers from multiple flaws. First, Plaintiff's separate count for declaratory relief is not redundant of any other claim in the CAC. The NJCFA, NYGBL §349 and CUTPA each list the remedies available to injured consumers. *See* N.J.S.A. §§ 56:8-2.11, 56:8-2.12, 56:8-19; NYGBL §349(h); Conn. Gen. Stat. §42-110g. While these statutes may not exhaustively list permissible remedies, and Plaintiff acknowledges the inherent powers of the federal courts, these consumer

protection statutes do not expressly provide for declaratory relief. Accordingly, Plaintiff's claim for declaratory relief is not redundant of any other claim alleged in his complaint.

Second, to the extent that Plaintiff cannot prosecute Defendants' TISA and Regulation DD violations as a breach of Plaintiff's deposit agreement, an argument made by CONA, then save for a Declaratory Judgment Act remedy, Defendants' violations may proceed unabated. Anticipating that CONA might argue the regulatory enforcement of TISA and Regulation DD as a response to this argument, an extensive Government Accountability Office ("GAO") report concluded the contrary to be true. That report, entitled *BANK FEES [,] Federal Regulators Could Better Ensure That Consumers Have Better Disclosure Documents Prior to Opening Checking or Savings Accounts* (January 2008), concluded (and the federal regulators expressly agreed) although violations of TISA are rampant, the federal banking regulators have been lax in protecting the rights of depositors and do not have procedures in place to enforce bank disclosure rules concerning fees imposed on depositors. *See* CAC ¶¶ 59, 61 (discussing GAO's report).

As is true for each of Plaintiff's claims, he has stated a claim under the Declaratory Judgment Act. That claim, and Plaintiff's request for declaratory relief, is not redundant of any other claim included in the CAC.

## CONCLUSION

For each of the foregoing reasons, CONA's motion to dismiss Counts I, II, IV, V and VI of Plaintiff's *Class Action Complaint* should be denied in its entirety. To the extent the Court grants any portion of CONA's motion, Plaintiff requests the right pursuant to Federal Rule 15 to amend the *Class Action Complaint* as to those issues and/or claims.

Dated: October 6, 2009
New York, New York

Respectfully submitted,

**WHALEN & TUSA, P.C.**

**/s/ Joseph S. Tusa**
Joseph S. Tusa (JT 9390)
Paul C. Whalen (PW 1300)
33 West 19th Street, 4th Floor
New York, NY 10011
Tel. (212) 400-7100
Fax. (212) 658-9685

**SCOTT + SCOTT LLP**
Joseph P. Guglielmo (JG 2447)
29 West 57th Street
New York, NY 10019
Tel. (212) 223-6444
Fax. (212) 223-6334

***Attorneys for Plaintiff***