**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
ERIC GUNTHER, individually and on behalf of
all others similarly situated,

                 Plaintiff,                  **MEMORANDUM OF**
                                         **DECISION AND ORDER**

            -against-                 09-cv-2966 (ADS)(AKT)

CAPITAL ONE, N.A. d/b/a/ CAPITAL ONE
BANK and CAPITAL ONE FINANCIAL
CORPORATION,

                 Defendants.
--------------------------------------------------------X
**APPEARANCES:**

**Scott & Scott LLP**
*Attorneys for the plaintiff*
500 Fifth Avenue, 40th Floor
New York, NY 10110
        By:    Joseph Guglielmo, Esq., Of Counsel

**Whalen & Tusa, P.C.**
*Attorneys for the plaintiff*
33 West 19th Street
Suite 405
New York, NY 10011
        By:    Paul C. Whalen, Esq.
               Joseph S. Tusa, Esq., Of Counsel

**Hunton & Williams LLP**
*Attorneys for the defendants*
200 Park Avenue 52nd Fl.
New York, NY 10166
and
1900 K Street, N W
Washington, DC 20006
        By:    Brian V. Otero, Esq.
               Neil K. Gilman, Esq.
               Ryan A. Becker, Esq., Of Counsel

**SPATT, District Judge.**

Plaintiff Eric Gunther brings this putative consumer class action on behalf of customers of defendant Capital One, N.A. ("Capital One Bank"), alleging that it and its corporate parent, defendant Capital One Financial Corporation ("Capital One Financial") charged him with improper banking fees.  Currently before the Court is Capital One Bank's motion to dismiss part of the claims asserted against it, and Capital One Financial's motion to dismiss all the claims asserted against it.  For the reasons set forth below, the Court grants Capital One Bank's motion in part and denies it in part, and grants Capital One Financial's motion in its entirety.

## I. BACKGROUND

The following facts are drawn from the plaintiff's complaint.  As is required, the Court takes them as true.

In December 2006, defendant Capital One Financial, a bank holding company, purchased a competitor bank holding company, North Fork Bankcorp, Inc. ("North Fork Holding").  At the time, Capital One Financial owned two national consumer banking subsidiaries, one of which was defendant Capital One Bank.  The newly-purchased North Fork Holding also owned two consumer banking subsidiaries, called North Fork Bank and Superior Savings of New England, NA. ("Superior Savings").  North Fork Bank and Superior Savings had branch locations is New York, New Jersey, and Connecticut.

After purchasing North Fork Holding, Capital One Financial consolidated operations by merging North Fork Holding's subsidiaries into its own subsidiary, Capital One Bank.  With this merger, customers who were originally depositors at

North Fork Bank or Superior Savings automatically became Capital One Bank accountholders.  This change became official for customers on March 10, 2008.

Prior to the December 2006 merger, plaintiff Eric Gunther was a North Fork Bank customer with a checking account at one of the bank's New Jersey branches. On March 10, 2008, Gunther therefore became—through no action of his own—a Capital One Bank accountholder.  However, the terms that governed Gunther's account, memorialized in a Disclosure Statement and Agreement (the "Account Agreement") with North Fork Bank, survived this change.  Thus, the provisions of the Account Agreement that described both the fees applicable to Gunther's account and the manner in which these fees could be changed continued to bind Capital One Bank after the merger.

Gunther's present claims relate to Capital One Bank's alleged mistreatment of former North Fork Bank and Superior Savings customers after the takeover.  His primary complaint is that, after he became a Capital One Bank customer, Capital One Bank increased certain fees without notifying him properly.  For example, he alleges that Capital One Bank began charging him $1.50 each time he withdrew cash from an ATM not owned by Capital One.  Also, it instituted a penalty fee for each time he overdrew his checking account.  According to Gunther, the Account Agreement required that, thirty days before these new fees could take effect, Capital One Bank had to mail him notice of the changes.  Gunther alleges that Capital One Bank failed to provide this required mailed notice.

Gunther also alleges additional malfeasance by Capital One Bank.  First, he claims he was charged "Undeliverable Mail Fees" on multiple occasions, despite the

fact that Capital One Bank possessed a valid mailing address for him and was in fact able to send mail to him.  Second, he asserts that Capital One Bank deceptively marketed its consumer accounts by calling his account a "Completely Free Checking" account, (Compl., ¶ 12), while charging the fees described above.  In the same vein, Gunther also complains that Capital One Bank acted deceptively by issuing press releases heralding the benefits of the transition from North Fork Bank to Capital One Bank, while omitting mention of the newly-imposed fees on customers' checking accounts.  Third, Gunther alleges that Capital One Bank failed to provide him a twice yearly notification that he had the right to request a listing of the terms, fees, and other relevant information with regard to his account, in violation of applicable law. Fourth, Gunther asserts that Capital One Bank charged "actual and true interest rates above the interest rates applicable to Class members' deposit accounts, including actual interest rates applicable to NSF / Overdraft / Uncollected Fees and loans." (Compl., ¶ 95(e).)  The import of this final allegation is not clear, but the Court understands it to challenge the validity of the overdraft fees applicable to Gunther's account.

Based on these alleged facts, Gunther asserts six claims against both defendants.  Gunther's first claim is for breach of contract based on five separate grounds: (1) Capital One Bank's failure to timely notify him of account fees, (2) the improper imposition of undeliverable mail fees, (3) the defendants' misleading or inaccurate statements concerning the terms of his account, (4) Capital One Bank's failure to provide notice every six months of depositors' rights to request a schedule of account fees and other information, and (5) the "charging [of] actual and true

interest rates above the interest rates applicable to Class members' deposit accounts" (Compl., ¶ 95(e)).

Gunther's second, third, and fourth claims allege violations of the state consumer protection statutes for New York, New Jersey, and Connecticut.  Thus, on behalf of "class members resident or injured in New York during class periods," Gunther asserts violations of New York General Business Law § 349.  (Compl. at 27.)  On behalf of "class members resident or injured in New Jersey during class periods," Gunther asserts violations of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8.  (Compl. at 30.)  Also, on behalf of "class members resident or injured in Connecticut during class periods," Gunther asserts violations of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110.  Gunther's fifth cause of action is for unjust enrichment, and his sixth is for a declaratory judgment pursuant to 28 USC § 2201.

Both defendants have now moved to dismiss the plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6).  Capital One Bank seeks partial dismissal of the plaintiff's breach of contract claim, and complete dismissal of all other claims against it *except* for the New Jersey consumer protection statute claim.  Capital One Financial moves for dismissal of all claims against it, on the grounds that it was uninvolved in Gunther's interactions with Capital One Bank.  Gunther opposes both motions to dismiss.

## II. DISCUSSION

### A. Standard on a Motion to Dismiss

Under the now well-established <u>Twombly</u> standard, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007).  The Second Circuit has explained that, after <u>Twombly</u>, the Court's inquiry under Rule 12(b)(6) is guided by two principles. <u>Harris v. Mills</u>, 572 F.3d 66 (2d Cir. 2009) (quoting <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)).

"First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions' and 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'"  <u>Id.</u> (quoting <u>Iqbal</u>, 129 S. Ct. at 1949).  "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss' and '[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  <u>Id.</u> (quoting <u>Iqbal</u>, 129 S. Ct. at 1950).  Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and . . .  determine whether they plausibly give rise to an entitlement of relief."  <u>Iqbal</u>, 129 S. Ct. at 1950.

### B. As to Capital One Bank's Motion to Dismiss

#### 1. Breach of Contract

The plaintiff asserts five separate bases for its breach of contract cause of action, and Capital One Bank moves to dismiss four of these five bases.  Specifically,

Capital One Bank moves to dismiss the plaintiff's breach of contract claim based on (1) Capital One Bank's alleged failure to timely notify him of changed fees, (2) Capital One Bank's allegedly misleading or inaccurate statements concerning the terms of Gunther's account, (3) Capital One Bank's alleged failure to provide notice every six months of depositors' rights to request a schedule of account fees and other information, and (4) the alleged "charging [of] actual and true interest rates above the interest rates applicable to Class members' deposit accounts."  The defendant does not challenge the breach of contract claim based on the alleged levying of improper "undelivered mail" fees.

### a. Failure to Timely Notify the Plaintiffs of Fee Changes

Gunther claims that Capital One Bank was contractually obligated to mail him notice of all fee changes to his account thirty days before those changes took effect, but failed to do so.  Gunther does not allege that the Account Agreement explicitly requires this, but rather asserts that it incorporates the Truth in Savings Act, 12 U.S.C. § 4301 *et seq.* ("TISA"), a statute that requires all consumer banks to provide thirty days' mailed notice to customers before changing account fee schedules.  For this proposition, the plaintiff relies on a portion of the Account Agreement that provides:

> These terms and conditions are subject to all applicable state and federal laws and regulations. . . .  We [Capital One Bank] have the right to change or add to these terms and conditions by posting a notice of the change in each of our branches or, if required by law, by mailing a notice of such change to you [Eric Gunther], prior to it taking effect, at your address as it exists in our records.

(Account Agreement, attached as Ex. 1 to Otero Decl., at 3)  According to the plaintiff, the parties incorporated TISA into the Account Agreement by stating that

the contract was "subject to all applicable state and federal laws and regulations," and that "[Capital One Bank has] the right to change or add to these terms and conditions . . . if required by law, by mailing a notice of such change to [Gunther], prior to it taking effect . . . ."  (Id.)

Capital One Bank does not dispute that TISA requires it to send timely mailed notice to customers before changing its fees.  Rather, Capital One Bank denies that the Account Agreement incorporated TISA's requirements.  Capital One Bank asserts, first, that the plain language of the Account Agreement does not support the plaintiff's allegation that it incorporates TISA.  Second, Capital One Bank asserts that TISA's statutory history undermines the plaintiff's interpretation.  Originally, TISA included a private right of suit for violations of its terms, but this was repealed as of 2001.  According to Capital One Bank, even if the parties wanted to incorporate TISA into the Account Agreement, the repeal of the private right to sue prohibits them from doing so.

The Court agrees with Capital One Bank that the agreement does not incorporate TISA.  First, the fact that the Account Agreement provides that it is "subject to all applicable state and federal law" (Account Agreement at 3) is a mere truism, without effect on the parties' rights or responsibilities.  Also, the Account Agreement's statement that Capital One Bank has "the right" to notice customers of changes of fees by mail "if required by law" does not impose additional performance obligations on Capital One Bank.  Rather, as the contract says, it creates a right for Capital One Bank.  Moreover, even if this language did create additional duties, it

makes no mention of TISA and does not itself require that the notice be mailed thirty days before the fee changes take effect.

In addition, the Court agrees with Capital One Bank that reading TISA's requirements into the parties' contract would impermissibly undermine Congress's expressed intent that TISA be enforced by a regulatory agency and not private citizens. When enacted, TISA included a private right to sue banks to enforce, among other things, TISA's notice requirements for changes to consumer account fee schedules. However, in 1996 Congress repealed this section of TISA, effective October 1, 2001. See Omnibus Consolidated Appropriation Act of 1997, Pub.L. 104–208, 110 Stat. 3009–470 (1996). Federal courts have not directly ruled on whether the repeal of TISA's private right of action precludes reading the statute into parties' contracts, but courts in this Circuit have addressed similar issues in analogous settings, and found, generally, that a statute without a private right of action may not be incorporated into a contract.

The most relevant analysis comes from Grochowski v. Phoenix Const., 318 F.3d 80, 86 (2d Cir. 2003), which dealt with the Davis-Bacon Act, a law regulating pay rates for laborers on federally-funded construction projects. In Grochowski, the plaintiffs were hired as construction workers by a contractor for the New York City Housing Authority ("NYCHA"). Because the relevant project received federal funds, the contractor agreed with the NYCHA to pay the laborers prevailing wage rates "as predetermined by the Secretary of Labor of the United States pursuant to the Davis-Bacon Act (Title 40, U.S.C., Sections 276a-276a-5)." Id. at 83. When the contractor allegedly paid the laborers less than required by the Davis-Bacon Act, the laborers

9

asserted a breach of contract claim against the contractor, claiming status as third party beneficiaries.

The Second Circuit did not challenge the laborers' theory that they were generally third party beneficiaries of the contractor's agreement with the NYCHA. Rather, it held that parties were not permitted to incorporate the Davis-Bacon Act into their contracts, because the statute contained no private right of action.  In that court's view, allowing parties to reference the Davis-Bacon Act in private actions would "interfere with the implementation of [the Davis-Bacon Act's legislative] scheme." Id. at 86 (quoting Davis v. United Air Lines, Inc., 575 F.Supp. 677, 680 (E.D.N.Y. 1983)).  Presumably, private reference to the Davis-Bacon Act would force courts to interpret the statute in the absence of the Davis-Bacon Act's enforcing administrative agency, and the Grochowski court believed Congress wanted to avoid this.  The court therefore held that "the plaintiffs['] efforts to bring their claims as [breach of contract] claims are clearly an impermissible 'end run' around the [Davis-Bacon Act's lack of private right of action]."  Id. at 86.  The Court therefore dismissed the plaintiffs' third-party contract action.  Id.

Judge Chin in the Southern District of New York applied Grochowski in another legal context in Broder v. Cablevision Systems Corp., 329 F. Supp. 2d 551 (S.D.N.Y. 2004). The plaintiff in Broder was a cable television subscriber who asserted that defendant Cablevision breached its contract with him by not providing him with appropriate notice of the available subscription rates.  Just as here, the contract did not expressly require this notice, but the plaintiff urged that the federal law requiring it should be incorporated into the parties' agreement.  Judge Chin first

found that the parties had not incorporated any substantive law by stating in their contract that Cablevision could change subscription prices "in accordance with applicable law."  Judge Chin then noted that the statutes and regulations on which the plaintiff relied did not include private rights of enforcement.  Citing Grochowski, Judge Chin held that, regardless of whether the parties intended to incorporate this law into their contract, they could not do so, because it would "interfere with legislative intent."  Broder, 329 F. Supp. 2d at 559.

The Court finds both of these cases analogous to the present situation.  TISA has no private right of action, and as in Grochowski and Broder, to permit a breach of contract suit based on TISA's substance would frustrate Congress's express indication that TISA be enforced exclusively by public entities.

To the extent the plaintiff relies on Allied Chemical Intern. Corp. v. Companhia de Navegacao Lloyd Brasileiro, 775 F.2d 476, 483 (2d Cir. 1985) to argue to the contrary, the Court finds the case inapplicable.  Unlike here, Allied Chemical permitted the extension of a statute that was *otherwise enforceable by private parties*, and moreover, the case predates Grochowski by more than fifteen years.

The plaintiff nevertheless contends that, even if the Account Agreement did not incorporate TISA, Capital One Bank still breached the contract by failing to timely and properly notify him of fee changes.  In this regard, the plaintiff relies on the "Right of Set Off" term in the contract, which provides:

> If you [Eric Gunther] owe us [Capital One Bank] money and that
> money is due, we can, to the extent permitted by law, use the funds
> in any or all of the accounts maintained by you with the Bank or any

of its affiliates to satisfy the amount owed. If we exercise this right,
we will notify you and inform you of the amount we have taken from
your account.

(Agreement at 5.)  According to the plaintiff, Capital One Bank breached this

provision because it had no basis for deducting from his account the amount of the

fees it assessed.

The plaintiff's argument is without merit.  First, this provision primarily

provides Capital One Bank with a right, not an obligation.  Moreover, without the

incorporation of TISA into the parties' contract, the plaintiff can identify no provision

of the contract that prohibits the alleged deduction of fees from his account.  Thus,

there is no cognizable breach of this provision of the Account Agreement.

The plaintiff also argues that Capital One Bank's failure to give him proper

notice violated the implied covenant of good faith and fair dealing inherent in the

Account Agreement.  Under the New Jersey law applicable to this New Jersey-based

contract, every contract includes a covenant of good faith and fair dealing, which

requires a defendant not to "exercise such discretion as it may have under the literal

terms of the contract to thwart plaintiff's expectation or purpose."  Wilson v.

Amerada Hess Corp., 168 N.J. 236, 250, 773 A.2d 1121 (N.J. 2001) (quoting

Emerson Radio Corporation v. Orion Sales Inc., 80 F.Supp.2d 307, 314 (D.N.J.

2000)).  Here, the covenant of good faith and fair dealing thus requires that neither

Gunther nor Capital One Bank take technically permissive actions that are contrary to

the overarching expectations set forth in the Account Agreement.

In the Court's view, the plaintiff has stated no facts that support an inference

that Capital One Bank sought to "thwart plaintiff's expectation or purpose" Wilson,

168 N.J. at 250, by not disclosing account fees by mail thirty days before they took effect.  To be clear: the plaintiff does not assert that Capital One Bank failed entirely to inform him of the changed account fees.  Rather, he asserts only that it failed to do so in the method required by TISA.  In the Court's view, this alleged failure is not a breach of the covenant of good faith and fair dealing.

For these reasons, the plaintiff's breach of contract claim on failure to inform grounds is dismissed.

### b. Capital One Bank's Statements Concerning the Plaintiff's Account

The plaintiff also alleges that Capital One Bank breached the Account Agreement by "[m]aking misleading or inaccurate statements concerning the terms, fees, charges, penalties and interest rates applicable to the contractual terms that apply to Plaintiff's and Class members' deposit accounts."  (Compl., ¶ 95(c).)  In support of this conclusion, the plaintiff identifies two statements arguably attributable to Capital One Bank.  First, the plaintiff refers to a press release from the "Defendants" in which a Capital One Financial officer stated: "Everything that made North Fork Bank a great bank and a great business partner for our clients will remain the same, but leveraging Capital One's national platform enables us to enhance and expand our product offerings and make changes for the better."  (Compl., ¶ 24.)  Second, the plaintiff alleges that his account was termed a "Completely Free Checking [A]ccount," and that it was described with the slogan "Free means free."  (Compl., ¶ 38.)

The plaintiff does not identify any express term of the Account Agreement that Capital One Bank breached by making these alleged statements, and the Court cannot find any such term.  Similarly, the Court does not view these statements as violating the implied covenant of good faith and fair dealing inherent in the Account Agreement.  In the Court's view, Capital One Bank's alleged description of the plaintiff's account as "free" did not "thwart" the "expectation or purpose," <u>Wilson</u>, 168 N.J. at 250, that the plaintiff memorialized in the Account Agreement.  Rather, the Account Agreement expressly provides that Capital One Bank may change the fees applicable to the plaintiff's account.  The plaintiff's position places the cart before the horse: he argues that when Capital One Bank said his account was "free," he expected that it wouldn't charge him any fees in the future.  This alleged conduct by Capital One Bank may (or may not) have been deceptive, but it did not deprive the plaintiff of what he should have expected when he agreed to the Account Agreement—namely, that Capital One Bank could unilaterally raise the fees on his account.  Thus, these statements cannot be viewed as violating the covenant of good faith and fair dealing.

### c. Failure to Inform the Plaintiff of His Right to Request a Fee Schedule

The plaintiff also alleges that Capital One Bank breached the Account Agreement by failing to inform him every six months of his right to request a fee schedule from Capital One Bank.  This claim fails for the simple reason that nowhere does the Account Agreement require this disclosure.  The plaintiff asserts that TISA requires this twice-yearly notification, but, as discussed above, the Account

14

Agreement does not incorporate the provisions of TISA.  The plaintiff therefore has not stated a claim for breach of contract on this ground.

### d. Improper Interest Rates

In addition, the plaintiff claims that Capital One Bank breached the Account Agreement by "[c]harging actual and true interest rates above the interest rates applicable to Class members' deposit accounts, including actual interest rates applicable to [Not-Sufficient Funds] / Overdraft / Uncollected Fees and loans." (Compl., ¶ 95(e).)  This allegation is not a model of clarity, but the Court understands the plaintiff to be alleging that Capital One Bank loaned him money to cover overdrafts of his checks, and that the fees Capital One Bank charged for these "loans" were equivalent to interest charges.  The plaintiff appears to assert that these "interest rates" were greater than the interest rate he earned on his deposits, and, therefore, this breached the Account Agreement.

The plaintiff's argument is not convincing.  The plaintiff claims that the overdraft fees amounted to interest charges "above the interest rates applicable to" his account.  However, he does not identify the "interest rates" that these charges allegedly exceeded.  In reviewing the Account Agreement, the Court finds no provision that discusses interest rates on loans to the plaintiff, or, for that matter, addresses loans at all.  The only "interest rate" that appears to apply to the plaintiff's account is the interest he receives on his deposits.  However, the Account Agreement nowhere suggests that, if Capital One Bank were to extend a loan to the plaintiff, it could not charge an interest rate above the rate the plaintiff earns on his deposits.  Ultimately, the Court finds that the acts alleged by the plaintiff violate no identifiable

term of the Account Agreement, and thus dismisses this basis for the plaintiff's

breach of contract claim.

### 2. Violation of the Connecticut Unfair Trade Practices Act

The plaintiff asserts that Capital One Bank's actions as described above

violated the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110

("CUTPA").  Capital One Bank has moved to dismiss this claim solely on the ground

that the plaintiff has no standing to assert this cause of action, because he neither lives

in Connecticut nor claims that he was damaged there.  The plaintiff does not directly

contradict this assertion, but rather argues in response that he should be permitted to

assert claims under CUTPA on behalf of other putative class members.  According to

the plaintiff, the appropriate procedure would be first to determine whether he is a

suitable class representative under Fed. R. Civ. P. 23, and only then to evaluate

whether he has standing to bring CUTPA claims.

In the Court's view, the United States Supreme Court has not fully explained

whether federal trial courts may consider Rule 23 class certification before

determining a plaintiff's standing to sue on a particular cause of action.  On the one

hand, the Supreme Court has stated plainly:

> That a suit may be a class action, however, adds nothing to the
> question of standing, for even named plaintiffs who represent a class
> "must allege and show that they personally have been injured, not
> that injury has been suffered by other, unidentified members of the
> class to which they belong and which they purport to represent."

Simon v. Eastern Kentucky Welfare Rights Organization, 426 U.S. 26, 40, n. 20, 96

S.Ct. 1917, 48 L.Ed.2d 450 (1976) (quoting Warth v. Seldin, 422 U.S. 490, 502, 95

S.Ct. 2197, 45 L.Ed.2d 343 (1975)); see also Lewis v. Casey, 518 U.S. 343, 357, 116

S.Ct. 2174, 135 L.Ed.2d 606 (1996); <u>Cent. States Se. and Sw. Areas Health and Welfare Fund v. Merck-Medco,</u> 433 F.3d 181, 199 (2d Cir. 2005).

On the other hand, the Supreme Court has also held that, "[when] class certification issues are . . . 'logically antecedent' to Article III concerns, and themselves pertain to statutory standing, [they] may properly be treated before Article III standing." <u>Ortiz v. Fibreboard Corp.</u>, 527 U.S. 815, 831, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999) (internal citations omitted, quoting <u>Amchem Products, Inc. v. Windsor,</u> 521 U.S. 591, 612, 117 S.Ct. 2231, 138 L.Ed.2d 689).

Courts in this Circuit facing this apparently ambiguous authority have generally—though not always—assessed standing to sue prior to analyzing class certification.  <u>See, e.g.</u>, <u>In re Lehman Bros. Securities and Erisa Litigation</u>, No. 09-cv-2017(LAK) --- F. Supp. 2d ----, 2010 WL 545992, *3 (S.D.N.Y. Feb. 17, 2010) (dismissing putative class claims against certain defendant mutual funds prior to class certification analysis, when named plaintiff held no shares in those defendant funds); <u>In re Salomon Smith Barney Mut. Fund Fees Litigation</u>, 441 F. Supp. 2d 579, 607 (S.D.N.Y. 2006) (same; collecting cases); <u>but see</u> <u>In re Scudder Mutual Funds Fee Litigation</u>, No. 04-cv-1921(DAB), 2007 WL 2325862, *9 (S.D.N.Y. Aug. 14, 2007) (noting that "[o]ther courts in this district have ruled that the question of whether a named plaintiff has standing to assert claims on behalf of shareholders of other funds is one of Rule 23 typicality, not one of Article III standing").

Here, the Court agrees with the prevailing interpretation by courts in this Circuit authority on the issue, and holds that the plaintiff does not have standing to assert claims against Capital One Bank under CUTPA.  The Court therefore dismisses

these claims with respect to the plaintiff, without prejudice to any putative class members who may have standing to sue.

### 3. Violations of the New York General Business Law § 349

The plaintiff asserts that Capital One Bank also violated New York's consumer protection statute, New York General Business Law § 349, as a result of the actions alleged in the complaint.  Capital One Bank asserts that the same analysis applicable to CUTPA applies to Section 349, and that the plaintiff has no standing to bring a claim under the New York law because he does not reside in New York State, nor was he injured there.  Unlike the CUTPA claim, the plaintiff counters here that he may assert a claim under Section 349 because he was injured by Capital One Bank in New York.

Section 349(a) declares unlawful: "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state . . . ."  Interpreting Section 349, the Court of Appeals of New York State has held that a non-New York resident may assert a claim under Section 349, but that to state a claim under this section "the transaction in which the consumer is deceived must occur in New York."  Goshen v. Mutual Life Ins. Co. of New York, 98 N.Y.2d 314, 324, 774 N.E.2d 1190, 746 N.Y.S.2d 858 (2002).

Here, the plaintiff contends that he satisfies the standing requirements for Section 349 because some of his injuries took place in New York.  However, the plaintiff does not describe in his complaint how he was injured in New York.  Rather, he alleges only that:

> Plaintiff and Class members residing in New York or who were
> assessed or charged challenged fees, charges or penalties for conduct
> that occurred in New York have been injured as a result of
> Defendants' violations GBL §349(a).

(Compl., ¶ 102.)  Although Fed. R. Civ. P. 8(a) requires only a "short and plain

statement" of the plaintiff's claim and the Court's basis for jurisdiction, the plaintiff's

claim here is insufficient.  The plaintiff's allegation is that he was "assessed . . . fees"

for "conduct" that occurred in New York, and that this violated the New York

consumer protection statute.  However, he offers nothing in the complaint to describe

his alleged "conduct" in New York, and does not connect that "conduct" with Capital

One Bank's alleged deceptive acts.

The plaintiff does fill in the gaps to some extent in his opposition to the

motion to dismiss.  There, the plaintiff asserts that he was assessed improper fees for

withdrawals of cash from ATMs in New York City.  This, he argues, entitles him to

assert a claim under Section 349.  The Court declines to consider this extrinsic

evidence for the purposes of the present motion, but in the interests of judicial

economy, the Court considers it to determine whether the plaintiff should be granted

leave to replead these facts in his complaint.  In this regard, the Goshen court also

stated that Section 349 was not "intended to function as a per se bar to out-of-state

plaintiffs' claims of deceptive acts leading to transactions within the state."  Id.

Taken at face value, the latter statement suggests that the plaintiff may assert a claim

under Section 349 for out-of-state deception, as long as it led him to take a related

action in New York.  The Court therefore finds that, on balance, it is prudent to

permit the plaintiff to amend his complaint to seek to assert this claim.  Accordingly,

the Court dismisses the plaintiff's cause of action under Section 349 without prejudice and with leave to file an amended complaint concerning this cause of action within thirty days.

### 4. Unjust Enrichment

In the alternative, the plaintiff asserts a claim against Capital One Bank for unjust enrichment.  To prove a claim of unjust enrichment, the plaintiff must show "(1) that the defendant was enriched; (2) that the enrichment was at the plaintiff's expense; and (3) that the circumstances are such that in equity and good conscience the defendant should return the money or property to the plaintiff."  Golden Pacific Bancorp v. F.D.I.C., 273 F.3d 509, 519 (2d Cir. 2001).  However, where a valid contract governs the obligations between parties, no claim for unjust enrichment will stand.  See In re First Central Financial Corp., 377 F.3d 209, 214, n. 4 (2d Cir. 2004) (citing cases); CBS Broad. Inc. v. Jones, 460 F. Supp. 2d 500, 506 (S.D.N.Y. 2006).

Here, the plaintiff admits that he may not recover on both a breach of contract claim and an unjust enrichment claim, but he contends that Fed. R. Civ. P. 8(d)(2) permits him to allege both in the alternative at this procedural stage.  Capital One Bank counters that pleading unjust enrichment in the alternative is not permitted when, as here, the parties agree that a valid contract controls the parties' relationship. While the law is not entirely settled on this point, the Court finds that the better reasoned and more prevalent authority in this Circuit holds that an unjust enrichment claim will not survive a motion to dismiss when an undisputed contract exists between the parties.  See, e.g., Orbit One Comm., Inc. v. Numerex Corp., Nos. 08-cv-0905(LAK), 08-cv-6233(LAK), 08-cv-11195(LAK), --- F. Supp. 2d ----, 2010 WL

847133, *5 (S.D.N.Y. March 10, 2010); <u>CBS Broad. Inc.</u>, 460 F. Supp. 2d. at 506. This is true even though the parties dispute the interpretation of the controlling contract. <u>See, e.g.</u>, <u>Price v. Cushman & Wakefield, Inc.</u>, No. 08-cv-8900, 2009 WL 3075599, *6 (S.D.N.Y., Sept. 26, 2009). Here, it is undisputed that a valid contract exists between the parties. The Court therefore dismisses the plaintiff's cause of action against Capital One Bank for unjust enrichment.

### 5. Declaratory Judgment

The plaintiff also asserts a claim for declaratory judgment against Capital One Bank. Capital One Bank argues that this claim is subject to dismissal because it is duplicative of the plaintiff's other claims. The Court disagrees, and finds that the remedy that the plaintiff seeks pursuant to his declaratory judgment cause of action is distinct from his other valid causes of action. The Court therefore denies this portion of the plaintiff's motion to dismiss.

### B. As to Capital One Financial's Motion to Dismiss

All of the claims the plaintiff asserts against Capital One Bank are also alleged against Capital One Financial, its sole shareholder. Capital One Financial has moved to dismiss all of these claims on the ground that it was uninvolved with any of the acts that the plaintiff alleges harmed him or the putative class members. The plaintiff opposes dismissal on two grounds. First, he asserts that he has properly alleged that Capital One Financial has direct liability for its own involvement in the alleged wrongful activity. Second, he maintains that Capital One Financial is also vicariously liable for Capital One Bank's alleged bad acts, because Capital One

Financial dominates and controls Capital One Bank.  Both of these contentions are disputed by Capital One Financial.

**1. Capital One Financial's Direct Liability**

First and foremost, the plaintiff asserts that the complaint states direct claims against Capital One Financial.  According to the plaintiff, "the [c]omplaint alleges in virtually every paragraph that [Capital One Financial] and [Capital One Bank] are liable for the wrongful conduct alleged therein."  (Pl.'s Op. to Capital One Financial's Mot. to Dis. at 4.)  Indeed, nearly all of the misconduct asserted in the complaint is alleged to have been perpetrated by the "Defendants."

However, aside from the fact that the complaint pleads against the defendants collectively, the only direct act by Capital One Financial alleged in the complaint was to state through a senior manager that "[e]verything that made North Fork Bank a great bank and a great business partner for our clients will remain the same, but leveraging Capital One's national platform enables us to enhance and expand our product offerings and make changes for the better."  (Compl., ¶ 24.)  In the Court's view, this statement does not constitute actionable conduct.

The complaint clearly states that the plaintiff was a depositor at Capital One Bank, with whom he also was bound by the Account Agreement.  The plaintiff also alleges that Capital One Bank actually levied the wrongful fees about which he complains.  Except for the plaintiff's use of the term "Defendants" in plural and his allegation that Capital One Financial controls Capital One Bank, Capital One Financial is left almost entirely out of the story.  In the Court's view, the plaintiff cannot avoid the fact that, when considered in full, the complaint at best states a claim

against Capital One Financial for derivative liability.  See, e.g., Ascension Health v. Am. Intern. Group, Inc., No. 08-cv-7765(PGG), 2009 WL 2195916, *2 (S.D.N.Y. Jul. 23, 2009) (dismissing complaint against parent corporation because "the Amended Complaint is devoid of factual allegations demonstrating the direct liability of Defendant AIG, the corporate parent of Defendant National Union. Instead, the Complaint simply lumps AIG with its subsidiary National Union").

Nevertheless, the plaintiff attempts to avert a corporate veil-piercing analysis by distinguishing between (1) a principal's vicarious liability for an agent's unratified actions, and (2) a principal's direct liability for actions that it authorizes or ratifies. According to the plaintiff, Capital One Financial authorized and ratified Capital One Bank's actions, and it is therefore directly liable for such acts.  However, the distinction the plaintiff makes is unavailing.  It is the basic rule of the corporate form that shareholders are not liable for the acts of a corporation unless there is a reason to lift the corporate veil.  See, generally, Fletcher Cyclopedia Corporations, § 41 (2010). This is not avoided by merely asserting that a shareholder authorized, ratified, or directed the actions of the corporation.  Such an exception would eviscerate the rule, and the plaintiff provides no authority that would support such a holding.

Therefore, the Court finds that the plaintiff has stated no claim against Capital One Financial for direct liability.

### 2. Capital One Financial's Indirect Liability

As a preliminary matter, the Court must first address the choice of law that applies to the issue of piercing Capital One Bank's corporate veil.  Under the New York State choice of law rules that the Court must apply, the law applicable to a

corporation's internal affairs is generally the law of the state of its incorporation.  See

Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995).  However, Capital One

Bank is chartered under the laws of the United States, so there is no obvious state law

to apply.  Citing Atherton v. F.D.I.C., 519 U.S. 213, 224, 117 S.Ct. 666, 136 L.Ed.2d

656 (1997), Capital One Financial thus urges the Court to apply the law of Virginia,

because Capital One Bank is headquartered in Virginia.  Atherton does appear to

permit courts to look to the location of the headquarters of a nationally chartered bank

to determine the applicable body of corporate law, though it does not articulate this

rule as a necessity.  Id.  However, the Court does view this rule as a reasonable

solution, and the plaintiff does not address the issue.  Thus, the Court accepts Capital

One Financial's submission that Virginia law should apply to issues of piercing

Capital One Bank's corporate veil.

Under Virginia law, a corporation's shareholders will be liable for the acts of

the corporation when both "(1) 'the corporate entity was the alter ego, alias, stooge,

or dummy of the individuals sought to be charged personally,' and (2) '. . . the

corporation was a device or sham used to disguise wrongs, obscure fraud, or conceal

crime.'"  H.S.W. Enterprises, Inc. v. Woo Lae Oak, Inc., 171 F. Supp. 2d 135, 145

(S.D.N.Y. 2001) (quoting Perpetual Real Estate Serv., Inc. v. Michaelson Properties,

Inc., 974 F.2d 545, 548 (4th Cir. 1992)).  Factors weighing on the first prong include

whether the parent and subsidiary "observe[d] corporate formalities, . . . kept

corporate records, . . . paid dividends," and shared directors.  Perpetual Real Estate

Serv., Inc., 974 F.2d at 548.  As for the second prong, one way this is met is by

showing that the defendant "'us[ed] the corporate form to (i) evade personal

24

obligations, (ii) perpetuate fraud or a crime, or (iii) commit injustice.'" <u>H.S.W.</u> <u>Enterprises, Inc.</u>, 171 F. Supp. 2d at 145 (quoting <u>C.F. Trust, Inc. v. First Flight Ltd.</u> <u>Partnership</u>, 111 F. Supp. 2d 734, 742 (E.D.Va. 2000)).

The Court finds that the plaintiff has not alleged facts that support piercing Capital One Bank's corporate veil.  First, the Court is skeptical that the plaintiff has shown that Capital One Financial and Capital One Bank have a shared identity.  The plaintiff bases his assertion of shared identity on allegations that (1) Capital One Financial controls Capital One Bank and references its earnings in its public filings and (2) the two share numerous directors.  However, there is no allegation that the two entities fail to observe corporate formalities or do not keep separate records, or that they intermingle funds.  Moreover, while the entities share members of their boards of directors, no individual is alleged to serve as a management executive for both entities.  Thus, without additional factual allegations, the Court finds it unlikely that the plaintiffs have alleged a shared identity between Capital One Bank and Capital One Financial.

However, regardless of whether the plaintiff has satisfied the first prong of the test, the plaintiff has not met its pleading burden with respect to the second prong.  In the Court's view, the complaint does not allege facts that support a conclusion that Capital One Bank is a "device or sham" used to "disguise wrongs, obscure fraud, or conceal crime." <u>H.S.W. Enterprises, Inc.</u>, 171 F. Supp. 2d at 145.  There is no indication that Capital One Bank is undercapitalized, or that the plaintiff and the putative class members could not fully recover from Capital One Bank with respect to any claim on which they succeed.  Likewise, there are no facts that suggest that

Capital One Bank was used to disguise, obscure, or conceal any alleged wrongdoing by Capital One Financial.  Rather, as the plaintiff points out, the relationship between the two entities is regularly disclosed in the defendants' public filings with the Securities and Exchange Commission.

In addition, the Court finds that its holding in Cassese v. Washington Mut., Inc., 262 F.R.D. 179 (E.D.N.Y. 2009), cited by the plaintiff, does not affect this analysis.  In Cassese, this Court granted class certification against a corporate parent, even though the class members' only direct transactions were with that parent's subsidiary.  However, that decision addressed standing to sue, and did not address whether the plaintiff had asserted a valid cause of action against the corporate parent.  Moreover, the decision was based on the New York law of corporate veil piercing, not Virginia law.  See id. at 185 (citing Laborers Local 17 Health and Ben. Fund v. Philip Morris, Inc., 26 F. Supp. 2d 593, 605 (S.D.N.Y.1998)).  Similarly, to the extent the plaintiff relies on Moses v. Citicorp Mortg., Inc., 982 F. Supp. 897 (E.D.N.Y. 1997) (allowing complaint to proceed against corporate parent without discussion of the entities' relationship) and Van Slyke v. Capital One Bank, 503 F. Supp. 2d 1353 (N.D. Cal. 2007) (allowing complaint to proceed against corporate parent where complaint did not differentiate between acts of parent and subsidiary), the Court finds these decisions neither persuasive nor binding.

Finding that the plaintiff has not alleged either direct or indirect liability against Capital One Financial, the Court grants Capital One Financial's motion to dismiss, and all claims against it are dismissed.

## III. CONCLUSION

For the foregoing reasons, it is hereby

     **ORDERED** that the plaintiff's cause of action against Capital One Bank for breach of contract is dismissed, *except* with respect to the plaintiff's cause of action for breach of contract related to "[c]harging, assessing and imposing Undeliverable Mail Fees on Plaintiff and members of the Undeliverable Mail Fee Class when the mail that was the subject of the fee was not undeliverable or when Defendants possessed a correct mailing address" (Compl., ¶ 95(b)); and it is further

     **ORDERED** that the plaintiff's cause of action against Capital One Bank for violation of the New York General Business Law §349 is dismissed without prejudice to replead by way of an amended complaint within thirty (30) days of the date hereof; and it is further

     **ORDERED** that the plaintiff's causes of action against Capital One Bank for (1) violations of the Connecticut Unfair Trade Practices Act, and (2) unjust enrichment are dismissed; and it is further

     **ORDERED** that Capital One Bank's motion to dismiss the plaintiff's cause of action for declaratory judgment is denied; and it is further

     **ORDERED** that the defendant Capital One Financial's motion to dismiss is granted, and all of the plaintiff's causes of action against Capital One Financial are dismissed; and it is further

     **ORDERED** that the Clerk of the Court is directed to amend the caption to this case to read as follows:

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
ERIC GUNTHER, individually and on behalf of
all others similarly situated,

                  Plaintiff,

            -against-

CAPITAL ONE, N.A. d/b/a/ CAPITAL ONE
BANK,

                Defendant.
-------------------------------------------------------X


**SO ORDERED.**

Dated: Central Islip, New York
April 8, 2010

                         __*/s/ Arthur D. Spatt*_____
                         ARTHUR D. SPATT
                  United States District Judge