IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ERIC GUNTHER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CAPITAL ONE, N.A. d/b/a CAPITAL ONE BANK, et al.<br><br>Defendants. | Case No. 09-cv-2966 (ADS) (AKT)<br><br>Arthur D. Spatt, USDJ<br>A. Kathleen Tomlinson, USMJ |

**PLAINTIFF'S AND CLASSES' MEMORANDUM OF LAW IN SUPPORT OF**
**FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION .................................................................................................................. 1

PROCEDURAL HISTORY ................................................................................................... 4

NATURE OF THE CASE ...................................................................................................... 8

TERMS OF THE SETTLEMENT ......................................................................................... 9

ARGUMENT ........................................................................................................................ 10

**I.      THE COURT SHOULD FINALLY CERTIFY THE SETTLEMENT CLASS** ....... 10

A.      The Settlement Class.................................................................................................. 10

B.      The Settlement Class Continues to Satisfy Federal Rule 23............................................ 11

**II.     THE SETTLEMENT IS PROCEDURALLY FAIR** ..................................................... 11

**III.    THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE** ........................ 13

A.      Range of Reasonableness In Light Of Possible Recovery................................................ 15

B.      Ability of CONA to Withstand A Greater Judgment......................................................... 17

C.      Opinions of Counsel .................................................................................................. 17

D.      Complexity, Expense and Likely Duration of the Litigation............................................. 18

E.      Risks Involved In Establishing Liability, Damages, And In Maintaining
the Class Action Through Trial..................................................................................... 19

F.      The Settlement Was Negotiated With Knowledge Of The Strengths And
Weaknesses Of The Claims Involved ............................................................................ 20

G.      The Response Of The Class Supports The Approval Of The Settlement........................... 21

**IV.     PLAINTIFF SHOULD BE PAID THE AGREED INCENTIVE AWARD** .............. 22

CONCLUSION....................................................................................................................23

i

# TABLE OF AUTHORITIES

## Cases

*Amchem Products, Inc. v. Windsor*,
   521 U.S. 591 (1997) ........................................................................................ 10, 11

*Becher v. Long Island Lighting Co.*,
   64 F. Supp. 2d 174 (E.D.N.Y. 1999) .................................................................... 21

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
   2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010) .......................................................... 22

*Bricker v. Planet Hollywood N.Y., L.P.*,
   2009 WL 2603149 (S.D.N.Y. Aug. 13, 2009) ........................................................ 23

*Chin v. RCN Corp.*,
   2010 WL 3958794 (S.D.N.Y. Sept. 8, 2010) ......................................................... 22

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ...................................................................... 14, 15, 16

*Dupler v. Costco Wholesale Corp.*,
   705 F.Supp.2d 231 (E.D.N.Y. 2010) ..................................................................... 22

*Goldberger v. Integrated Resources, Inc.*,
   209 F.3d 43 (2d Cir 2000) .................................................................................... 14

*Gross v. Washington Mut. Bank, F.A.*,
   2006 WL 318814 (E.D.N.Y. Feb. 9, 2006) ............................................................ 14

*Gunther v. Capital One Bank, N.A.*,
   703 F. Supp. 2d 264 (E.D.N.Y. 2010) ..................................................................... 5

*In re Currency Conversion Fee Antitrust Litig.*,
   263 F.R.D. 110 (S.D.N.Y. 2009) ..................................................................... 22, 23

*In re Excess Value Ins. Coverage Litig.*,
   598 F. Supp. 2d 380 (S.D.N.Y. 2005) .................................................................... 16

*In re Metlife Demutualization Litig.*,
   689 F.Supp.2d 297 (E.D.N.Y. 2010) ..................................................................... 21

*In re Mexico Money Transfer Litig.*,
   267 F.3d 743 (7th Cir. 2001) ................................................................................ 11

*In re PaineWebber Ltd. P'ships. Litig.*,
   147 F.3d 132 (2d Cir. 1998) ................................................................................. 14

*In re Prudential Sec. Inc. Ltd. Partnerships Litig.*,
   163 F.R.D. 200 (S.D.N.Y. 1995) ........................................................................... 10

*In Re Sterling Foster & Co.*,
   238 F. Supp. 2d 480 (E.D.N.Y. 2002) .................................................................... 14

*In re Sterling Foster & Co., Inc.*,
   2006 WL 3193744 (E.D.N.Y. Oct. 31, 2006) ................................................ 11, 18

*In re Twinlab Corp. Sec. Litig.*,
   187 F. Supp. 2d 80 (E.D.N.Y. 2002) ..................................................... 10

*In re Vitamins*,
   2000 U.S. Dist LEXIS 8931 (D.D.C. Mar. 30, 2000) ........................................ 15

*Johnston v. Comerica Mortgage Corp.*,
   83 F.3d 241 (8th Cir. 1996) .............................................................. 16

*Lowenschuss v. Bluhdorn*,
   613 F.2d 18 (2d Cir. 1980) ............................................................... 20

*Malchman v. Davis*,
   706 F.2d 426 (2d Cir. 1983) .............................................................. 11

*Maley v. Del Global Tech. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) .............................................. 14, 15, 20

*Mills v. Elec. Auto-Lite Co.*,
   396 U.S. 375 (1970) ..................................................................... 16

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972) .............................................................. 15

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) ..................................................................... 10

*Protective Committee for Independent Stockholders of TMT Trailer Ferry. Inc. v. Anderson*,
   390 U.S. 414 (1968) ..................................................................... 15

*Republic Nat'l Life Ins. Co. v. Beasley*,
   73 F.R.D. 658 (S.D.N.Y. 1977) ........................................................... 17

*Steinberg v. Nationwide Mut. Ins. Co.*,
   619 F.Supp.2d 219 (E.D.N.Y. 2009) ....................................................... 18

*Uniondale Beer Co., Inc. v. Anheuser-Busch, Inc.*,
   1989 WL 6377 (E.D.N.Y. Jan. 4, 1989) .................................................... 15

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) ........................................................... 14, 21

*Walsh v. Northrop Grumman Corp.*,
   1999 WL 184654 (E.D.N.Y. March 25, 1999) ............................................ 12, 14

*Weil v. Long Island Sav. Bank*,
   188 F. Supp. 2d 258 (E.D.N.Y. 2002) ............................................... 14, 19, 21

*Weinberger v. Kendrick*,
   698 F.2d 61 (2d Cir. 1982) ............................................................... 17

*Westerfield v. Wash. Mut. Bank*,
   2009 U.S. Dist. LEXIS 94544 (E.D.N.Y. Oct. 2, 2009) ..................................... 10

**STATUTE & RULES:**

Fed. R. Civ. P. 23(a) ................................................................................................ 11

Fed. R. Civ. P. 23(b)(3) .......................................................................................... 11

Fed. R. Civ. P. 23(e) ................................................................................... 1, 14, 23

Fed. R. Civ. P. 26(a) ............................................................................................ 4, 20

Fed. R. Civ. P. 26(f) ............................................................................................. 4, 12

**OTHER AUTHORITIES:**

*Manual For Complex Litigation, Fourth*, §21.634 (2004) ....................................... 14

*New York General Business Law* §349 ..................................................................... 5

Herbert Newberg & Alba Conte, *Newberg on Class Actions* (4th ed. 2002), §11.41 ................. 21

Plaintiff Eric Gunther ("Plaintiff"), by and through his counsel, and Class Counsel respectfully submits this Memorandum of Law and the accompanying Declarations of Joseph S. Tusa ("Tusa Decl.") and Joseph P. Guglielmo ("Guglielmo Decl.") in support of final approval of the class action settlement between Plaintiff and the Settlement Class and defendant Capital One, N.A. d/b/a Capital One Bank ("CONA" and collectively with Plaintiff and the Settlement Class, the "Settling Parties") pursuant to Fed. R. Civ. P. 23(e).  All Settling Parties and Class Counsel consent to final approval of Settling Parties' settlement and no Settlement Class member has objected to final approval.

## INTRODUCTION

The settlement set forth in the Settling Parties' September 15, 2010 Amended Class Action Settlement Agreement presents the Court with the rare occurrence in the settlement context where the Settlement Class was presented with the opportunity to recover more than 100% of their collective and individual injuries while, in addition, the CONA as ceased charging the Undeliverable Mail Fees ("UMFs") that are challenged in this action.  CONA has agreed to pay attorneys' fees to Class Counsel and all the settlement notice and administration costs over-and-above the settlement recovery made available to all Settlement Class members.  Added together, these benefits exceed the amount of UMFs collected by CONA from the Settlement Class from January 1, 2007 to November 20, 2009 (the "Class Period").

The Settling Parties' settlement (the "Settlement") was initially set forth in a Class Action Settlement Agreement dated July 2, 2010.  Also on July 2, 2010, the Settling Parties filed a joint motion for preliminary approval of the Settlement and approval of the submitted Notice of Class Action Settlement (the "Notice"), Proof of Claim Form (the "Claim Form") and notice disbursement procedures. *Docket No. 47.*  On July 20, 2010, this Court entered an order granting

preliminary approval of the Settlement and approving the class notice, notice program, proof of claims process and settlement administrator. *Docket No. 48*. In that Order, this Court also preliminarily certified the following class for settlement purposes (the "Settlement Class."):

> All depositors of North Fork Bank ("NFB"), Superior Savings of New England, N.A. ("SSNE") or CONA in the states of New Jersey, New York and Connecticut who were charged an undeliverable mail fee by any of those entities during the period January 1, 2007 through November 20, 2009 which undeliverable mail fee(s) has/have not been refunded.

*Id*. at ¶3. The Court's July 20, 2010 Order further approved Plaintiff as the class representative, his counsel Joseph S. Tusa and Joseph P. Guglielmo as Class Counsel, and Rust Consulting, Inc. as the Settlement Administrator. That Order also set forth deadlines for Settlement Class members to submit claims, requests for exclusion and for objections to Settlement or Class Counsel's attorneys' fees. *Id*.

After the Notice and Claim Form had been mailed by the Settlement Administrator to over 40,000 Settlement Class members identified by CONA, CONA indicated that its list of Settlement Class members was incomplete. Class Counsel's review and investigation of the Settlement Class list and accompanying information also discovered further data errors. To resolve these errors, the Settling Parties negotiated and executed the Amended Class Action Settlement Agreement (the "Settlement Agreement") on September 15, 2010, attaching a revised Notice, Claim Form and proposed order for preliminary approval of the Settlement. The Settling Parties submitted the revised Settlement Agreement and related documents to the Court for approval. *See Docket No. 53*. On September 24, 2010, the Court again granted the parties Settlement Agreement, Notice and Claim Form. *See Docket No. 54*. The Court's September 24, 2010 Order directed the Notice and Claim Form be mailed to all Settlement Class members who did not previously receive direct mail notice of the Notice and Claim Form. The dates for

Settlement Class member claims, objections and exclusion requests were extended for all Settlement Class members, even those who received direct mail notice in conformity with the Court's July 20, 2010 Order.  The Fairness Hearing was adjourned to December 7, 2010.  All the revised Settlement deadlines and Fairness Hearing date were included in the revised Notice and posted to the settlement website maintained by the Settlement Administrator (www.caponemailfeesettlement.com).

The Settlement was negotiated between experienced counsel for all parties over a seven-month period, before and after the Court was informed that settlement negotiations were ongoing.  Negotiations were conducted at arm's length and were ceased on multiple occasions when the parties failed to reach agreement.  Settlement negotiations were also completed after substantial discovery had been exchanged in this case, and after Class Counsel had performed a substantial investigation into the acts and practices challenged in this action.  In addition to receiving responses to document demands and interrogatories propounded on CONA, Class Counsel requested and received freedom of information responses from ten federal and state banking or consumer protection agencies.

No Settlement Class member has objected to the Settlement.  In addition, only five Settlement Class members have requested exclusion from the Settlement Class.  As of November 24, 2010, with a week remaining for claims to be filed, the Court-approved Settlement Administrator has reported receiving claim forms from 572 class members.  Pursuant to the terms of the Settlement, each Settlement Class member who submits a valid proof of claim form will be entitled to receive a refund of $12.30 for each Undeliverable Mail Fee assessed or collected by CONA, which fee was assessed or collected in the amount of $15.00 (or less in a minority of instances).   The Court-imposed deadline for Settlement Class members to mail

3

Claim Forms to receive a financial recovery under the Settlement is November 30, 2010. *See Docket No. 54 at ¶7.*

The Settlement is fair, reasonable and adequate, has complied in all respects with Rule 23(e) and the Orders of this Court, and should be granted final approval.

## PROCEDURAL HISTORY

On July 10, 2009, Plaintiff filed this lawsuit as a putative class action against CONA and its parent, Capital One Financial Corporation ("COF"), alleging violations of the consumer protection statutes in New York, New Jersey and Connecticut, breach of contract and also a Declaratory Judgment Act claim. In lieu of an answer, CONA and COF filed motions to dismiss each of Plaintiff's claims except the claims arising under the New Jersey Consumer Fraud Act.

On November 12, 2009, the parties submitted their Joint Report pursuant to Fed. R. Civ. P. 26(f), wherein they agreed that no settlement could be reached at that time. *Docket No. 22*. Shortly thereafter, the parties exchanged initial disclosures under Fed. R. Civ. P. 26(a). On November 18, 2009, Magistrate Judge Tomlinson entered a Case Management and Scheduling Order in this action. *Docket No. 25*. Among other things, that Order required the parties to exchange Rule 26(a) disclosures by November 23, 2009, and to serve document and interrogatory requests no later than December 21, 2009. That Order further established May 17, 2010 as the deadline to complete fact discovery.

Plaintiff served two sets of requests for documents and interrogatory responses, on September 21, 2009 and December 21, 2009. Class Counsel have carefully reviewed and evaluated the documents produced by CONA and the interrogatory responses served by CONA and COF in response to those discovery requests. CONA and COF served discovery requests for

documents and interrogatories on Plaintiff, respectively, on November 30, 2009 and December 10, 2009. Plaintiff and his counsel responded and objected to those discovery requests.

On January 20, 2010, the parties informed the Court that they had been engaged in settlement negotiations for the past month. *Docket No. 27*. As a result, the parties jointly requested the adjournment of discovery deadlines in the Court's November 18, 2009 Scheduling Order. Following multiple telephone conferences with Magistrate Judge Tomlinson to report on the status of those negotiations, the Court ordered discovery to proceed. An Amended Scheduling Order was entered on March 29, 2010 ordering discovery to proceed and concluded by July 30, 2010. *Docket No. 31*. Subsequently, the parties served notices to take depositions. Plaintiff and his counsel also filed three motions to compel discovery.

On April 8, 2010, this Court granted in part and denied in part CONA's motion to dismiss, and granted COF's motion to dismiss. *See Gunther v. Capital One Bank, N.A.*, 703 F. Supp. 2d 264 (E.D.N.Y. 2010) (*Docket No. 34*). The Court's decision sustained Plaintiff's breach of contract claims based on the assessment of UMFs by CONA. The Court dismissed Plaintiff's breach of contract claims based on the federal Truth in Savings Act, which Plaintiff argued was incorporated into CONA's deposit agreements. The Court dismissed the Plaintiff's claims alleging violations of the Connecticut Unfair Trade Practices Act based on Plaintiff's standing to assert those claims. It dismissed without prejudice, Plaintiff's claims under New York General Business Law §349, acknowledging that Plaintiff may have claims under that statute, even as a non-resident of New York based on documents submitted in opposition to the dismissal motions. The Court's decision directed Plaintiff to file an amended complaint.

Prior to the filing of Plaintiff's amended complaint, on April 23, 2010, CONA filed an answer to Plaintiff's original complaint, asserting eleven affirmative defenses. *Docket No. 35*.

On May 17, 2010, Plaintiff filed his First Amended Class Action Complaint.  *Docket No. 38*.

Plaintiff's First Amended Class Action Complaint alleged claims under the consumer protection

statutes in New York and New Jersey, breach of contract and also a Declaratory Judgment Act

claim.  That complaint defined a putative class of consumers as follows:

> "All depositors of North Fork Bank or Superior Bank or CONA who were
> charged undeliverable mail fees on or since January 1, 2007, which undeliverable
> mail fees have not been fully refunded, when the mail subject to the undeliverable
> mail fee was not undeliverable or when CONA possessed a correct mailing
> address (the 'Class')."

*Docket No. 38 at ¶94*.  On June 3, 2010, CONA answered the First Amended Class Action

Complaint, again asserting eleven affirmative defenses.  *Docket No. 44*.

After informing Magistrate Judge Tomlinson on March 29, 2010 that no settlement had

been reached, the parties continued to negotiate while simultaneously proceeding with discovery.

On June 3, 2010, the parties informed this Court that they had agreed to the principle terms of

settlement.  The parties further agreed to draft and present their Settlement to this Court for

preliminary approval within thirty days.  Following an intensive effort to complete negotiations

and draft the papers memorializing their agreement, the parties executed the Settlement

Agreement on July 2, 2010.

The Settlement, along with each exhibit to the Settlement, was submitted to the Court in a

joint motion for preliminary approval supported by a memorandum of law brief submitted by

Plaintiff's counsel, each dated July 2, 2010.  *See Docket No. 47*.  Included among the exhibits to

the Settling Parties' July 2, 2010 Settlement Agreement were the proposed Notice of Class

Action Settlement and Proof of Claim form. *See Docket No. 47-1*.   The Court granted

preliminary approval to the Settlement in an Order entered on July 20, 2010.  *Docket No. 48*.

Among other things, that Order approved the form of the Notice and notice distribution plan,

preliminarily certified the Settlement Class, Class Representative and Class Counsel and preliminarily approved the Settlement.

Subsequent to and in conformity with the July 20, 2010 Order, CONA prepared and served a list of class members on Class Counsel and the Settlement Administrator, along with information concerning Settlement Class membership.  On July 30, 2010, the Settlement Administrator mailed 40,118 copies of the Notice and Claim Form to members of the Settlement Class.  *See* Declaration of Eric J. Miller Regarding Dissemination of Class Settlement Notice (Sept. 15, 2010) at ¶5.  (*Docket No*. *52*).  In addition, as approved by the Court, the Notice was published by Class Counsel as press release issued on August 4, 2010 and posted by the Settlement Administrator on the website established and maintained by them (www.CapOneMailFeeSettlement.com).  *Id*. at ¶9.

After distribution of the Notice and Claim Form to the initial group of 40,118 Settlement Class members, further investigation by both Class Counsel and CONA's counsel discovered that the Settlement Class list was incomplete and contained errors both as to the amount and number of UMFs charged to certain Settlement Class Members.  Upon confirmation, counsel for CONA advised the Court of these issues.  *See Docket Nos*. *50, 51;* Settlement Agreement ¶¶ 19, 20.  To resolve these issues, Class Counsel and CONA's counsel negotiated an amended Settlement Agreement, Notice and Claim Form that, among other things, required CONA to submit additional and corrected Settlement Class member lists and UMF data to Class Counsel and the Settlement Administrator.  CONA was further required to pay for mailing of the amended Notice and Claim Form to Settlement Class members omitted from the initial mailing and to reset the deadlines for all Settlement Class members to submit claims to receive Settlement proceeds to be paid by CONA.  The amended Settlement Agreement and exhibits

were submitted to the Court on September 15, 2010. *Docket No. 53*. The Court entered an Order on September 24, 2010 extending its preliminary approval of the Settlement to the amended Settlement Agreement and resetting the deadlines for Settlement Class member claims, objections and exclusion requests. *See Docket No. 54* at ¶¶ 6(e), 7, 8. The Fairness Hearing was adjourned to December 7, 2010. *Id*. at ¶4. The additional Notices and Claim Forms were mailed by the Settlement Administrator to 3,330 Settlement Class members on October 1, 2010.

## NATURE OF THE CASE

Plaintiff's claims based on CONA's assessment of UMFs are brought on behalf of himself and other CONA deposit account clients who reside in New York, New Jersey and Connecticut. Prior to CONA having ceased charging that fee on November 20, 2009, CONA charged Plaintiff and Settlement Class Members one or more UMFs in the amount of $15.00 (or less in a minority of cases when the Settlement Class member's deposit account had a balance less than $15.00).

During the Class Period, Plaintiff was improperly charged nineteen UMFs by CONA for monthly statements that he had actually received. After numerous email and in-person complaints by Plaintiff to CONA failed to resolve his complaints, he commenced this action. Prior to filing this action, Plaintiff alleges he was informed by a CONA branch employee that CONA was having problems properly assessing UMFs, but that it would only refund six of those fees to Plaintiff. This action sought to obtain refunds of all the UMFs improperly assessed against Plaintiff's and all Settlement Class members' deposit accounts during the Class Period. Supplemental interrogatory responses by CONA represented that amount to be $3,323,811.60.

## TERMS OF THE SETTLEMENT

A detailed description of the Settlement was submitted to this Court by Class Counsel in support of the Settling Parties' July 2, 2010 motion for preliminary settlement approval. The Settlement Agreement and its exhibits were publicly filed for consideration by the Court and posted on a website for review by the Settlement Class. This Court twice granted preliminary approval of the Settlement. *Docket Nos. 48, 54.* By way of review, the Settlement contains the following material terms:

- CONA agreed to make available $2,725,525.51 to refund $12.30 of each Undeliverable Mail Fee (usually $15.00) charged or assessed by CONA monthly against the deposit bank accounts of all Settlement Class members from January 1, 2007 to November 20, 2009 who submitted a valid Proof of Claim Form. *See* Settlement Agreement ¶¶ 30, 31;

- As of November 20, 2009, CONA has ceased charging any and all UMFs on all deposit accounts in New York, New Jersey and Connecticut. *See* Settlement Agreement ¶3;

- CONA has agreed to pay all costs to provide the Notice and Claim Form to all Settlement Class members by direct mail notice, over and above the $2,725,525.51 CONA made available to pay claiming Settlement Class members. *See* Settlement Agreement ¶34;

- CONA has agreed to pay all costs to administer the Settlement and distribute the Settlement proceeds to claiming Settlement Class members, including fees charged by the Settlement Administrator estimated to $155,000.00, over and above the $2,725,525.51 CONA made available to pay claiming Settlement Class members. *See* Settlement Agreement ¶34;

- CONA has agreed to pay attorneys' fees and reimburse costs to Class Counsel in an amount not to exceed $750,000.00, subject to Court approval, and over and above the $2,725,525.51 CONA made available to pay claiming Settlement Class members and in addition to CONA's agreement to pay the costs of Settlement Class notice and administration. *See* Settlement Agreement ¶37; and

- Settlement Class members who have not requested exclusion will release and dismiss their claims alleged this action against CONA with prejudice. Settlement Agreement ¶¶ 26(q),(r), (s), 36.

<u>ARGUMENT</u>

## I.    THE COURT SHOULD FINALLY CERTIFY THE SETTLEMENT CLASS

### A.    THE SETTLEMENT CLASS

This Court has preliminarily-approved certification of a settlement class defined as:

> All depositors of North Fork Bank ("NFB"), Superior Savings of New England, N.A. ("SSNE") or CONA in the states of New Jersey, New York and Connecticut who were charged an undeliverable mail fee by any of those entities during the period January 1, 2007 through November 20, 2009 which undeliverable mail fee(s) has/have not been refunded.

*Docket No. 54 at ¶3.* The Court has further approved Plaintiff as the class representative and his counsel, Joseph S. Tusa and Joseph P. Guglielmo, as Class Counsel. *Id.*

In accordance with the Federal Rules and due process, the preliminary approval Orders entered by this Court permitted Settlement Class members to opt out of or object to the Settlement. *See* Fed. R. Civ. P. 23(e); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Only five Settlement Class members opted-out of the Settlement Class. *See* Declaration of Robin Niemiec at ¶10 (11/29/10). Settlement classes are often used to settle class litigation. "When a court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only." Newberg, §11.27 at 11-40. The federal courts approve of the use of settlement classes. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 619-20 (1997); *Westerfield v. Wash. Mut. Bank*, 2009 U.S. Dist. LEXIS 94544, at *9 (E.D.N.Y. Oct. 2, 2009); *In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80, 82-83 (E.D.N.Y. 2002) (Spatt, J.); *In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 163 F.R.D. 200, 205 (S.D.N.Y. 1995) ("In fact, . . . settlement classes are favored when there is little or no likelihood of abuse, and the settlement is fair and reasonable and under the scrutiny of the trial judge.") (citations and internal quotation

marks omitted).

**B.      THE SETTLEMENT CLASS CONTINUES TO SATISFY FEDERAL RULE 23**

The Settling Parties jointly seek final certification of the Settlement Class pursuant to Federal Rule 23(a), 23(b)(3) and 23(e).  Based on the Settling Parties' memoranda in support of preliminary approval, this Court twice preliminarily held that the Settlement Class satisfied the numerosity, commonality, typicality and adequacy requirements of Federal Rule 23(a).  It also twice found the Settlement Class satisfied the predominance and superiority requirements of Federal Rule 23(b)(3).  This Court's preliminary approval Orders accord with the standards for certification of consumer class actions.  *See In re Mexico Money Transfer Litig.*, 267 F.3d 743, 747 (7th Cir. 2001) ("Many opinions of which *Amchem [Products, Inc. v. Windsor]* is one, 521 U.S. [591,] 625 [1997], give consumer fraud as an example of a claim for which class treatment is appropriate.").

No Settlement Class member has objected to certification of the Settlement Class, the appointment of Plaintiff as the class representative or the certification of Class Counsel.  The Settling Parties request this Court to finally certify the Settlement Class.

**II.      THE SETTLEMENT IS PROCEDURALLY FAIR**

Prior to assessing the substantive fairness of a class action settlement, the Court should determine that it was negotiated in a procedurally fair manner.  *See In re Sterling Foster & Co., Inc.*, 2006 WL 3193744, at **3-5 (E.D.N.Y. Oct. 31, 2006) (Spatt, J.) (citing *Malchman v. Davis*, 706 F.2d 426, 433 (2d Cir. 1983)).  "A strong presumption of fairness attaches to proposed settlements that have been negotiated at arms-length." *In re Sterling Foster & Co., Inc.*, at *3.  Other courts in this District have likewise upheld this presumption:

A strong presumption of fairness in favor of the proposed settlement arises where:
(1) the settlement is the result of arm's length negotiations; (2) counsel is

11

> experienced; (3) sufficient discovery has been conducted, thereby allowing counsel
> to act intelligently; and (4) the number of objectors is relatively small.

*Walsh v. Northrop Grumman Corp.*, 1999 WL 184654, at *3 (E.D.N.Y. March 25, 1999).   The

other factors discussed in *Walsh* are similarly present and are discussed below in connection with

the substantive fairness of the Settlement.

Counsel for the Settling Parties negotiated the Settlement at arm's length with the

knowledge of Magistrate Judge Tomlinson.   *See* Settlement Agreement ¶¶ 12-14. Those

negotiations were hard-fought between experienced counsel and lasted over seven months. On

November 12, 2009, the parties submitted their Joint Report pursuant to Fed. R. Civ. P. 26(f),

wherein they agreed that no settlement could be reached at that time.  *Docket No. 22*. On January

20, 2010, the parties informed the Court that they had been engaged in settlement negotiations

for the past month.  *Docket No. 27*.  Following multiple telephone conferences with Magistrate

Judge Tomlinson to report on the status of those negotiations.  On March 29, 2010, the parties

advised Magistrate Judge Tomlinson that had been unable to negotiate a settlement.  As a result

the Court ordered discovery to proceed.

After March 29, 2010, Class Counsel and CONA's counsel continued to negotiate a

potential settlement of this action, while simultaneously proceeding with discovery.   After

meeting on numerous occasions in person and by telephone, on June 3, 2010, the Settling Parties

informed this Court that they had agreed to the principle terms of settlement. Following an

intensive effort to complete negotiations and draft the papers memorializing their agreement, the

Settling Parties executed a settlement agreement on July 2, 2010.  As discussed above, after the

initial settlement was preliminarily approved, additional negotiation was required to negotiate the

amended Settlement Agreement to resolve issues discovered during the class notice process.

Counsel for the parties engaged in still further negotiation in October and November 2010 to resolve issues concerning the treatment of disputed Settlement Class member claims submitted to the Settlement Administrator. *See* Settlement Agreement ¶30(d) (addressing process to resolve "Disputed Claims."). The resolution of these negotiations is included in the revised [Proposed] Order and Judgment Finally Approving Settling jointly submitted by the Settling Parties with their submissions endorsing final approval of the Settlement. That proposed order and judgment allows as valid all claims by Settlement Class members whose Claim Forms list UMFs charged or assessed against their deposit accounts by CONA within five UMFs as indicated in CONA's books and records. For Settlement Class member claims exceeding the five-UMF "grace," such claims will be considered valid and paid by CONA based on the actual number of UMFs paid by a Settlement Class member as indicated in CONA's books and records.

The initial settlement, the amended Settlement Agreement and the resolution of the disputed Settlement Class member claims were negotiated by experienced counsel at arm's length. At all turns, the Court was kept apprised of counsel's negotiation efforts. The Settlement process was procedurally fair and the Settlement should be finally approved.

## III.   THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE

Given the favorable response of the Settlement Class, the benefits provided by the Settlement, the fact that the Settlement is the product of vigorous advocacy and arm's length negotiation between informed counsel experienced in class action litigation, and that the risks of continued litigation outweigh the possible benefits such litigation could generate, this Court should grant final approval to the proposed Settlement. The proposed Settlement made available settlement proceeds that exceeded the amount of UMFs charged and assessed by CONA during the Class Period. After this action was filed and while Plaintiff and Class Counsel were

prosecuting this lawsuit, CONA ceased charging UMFs to all Settlement Class members, and indeed all deposit account clients in New York, New Jersey and Connecticut.

"'At the fairness hearing, the proponents of the settlement must show that the proposed settlement is "'fair, reasonable, and adequate.'" *Manual For Complex Litigation, Fourth*, § 21.634, at 322 (2004); *see also* Fed. R. Civ. P. 23(e). The standards for determining whether a class settlement is fair, reasonable and adequate are well-established in this Circuit:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation ….

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (citations omitted), *abrogated on other grounds by Goldberger v. Integrated Resources, Inc*., 209 F.3d 43 (2d Cir 2000). *See also,* Fed. R. Civ. P. 23(e); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc*., 396 F.3d 96, 117 (2d Cir. 2005); *Weil v. Long Island Sav. Bank*, 188 F. Supp. 2d 258, 262 (E.D.N.Y. 2002).

In weighing the *Grinnell* factors, the Court should consider the public interest in settling complex class actions*. See In re PaineWebber Ltd. P'ships. Litig.*, 147 F.3d 132, 138 (2d Cir. 1998) (discussing "the strong judicial policy in favor of settlements, particularly in the class action context."); *Gross v. Washington Mut. Bank, F.A.*, 2006 WL 318814, at *4 (E.D.N.Y. Feb. 9, 2006) ("the law looks favorably upon class action settlements because avoiding a trial conserves scarce judicial resources."); *In Re Sterling Foster & Co*., 238 F. Supp. 2d 480, 484 (E.D.N.Y. 2002) (Spatt, J.) ("Judicial discretion should be exercised in light of the general policy favoring settlement."); *Walsh*, 1999 WL 184654, at *2 ("It is well settled that the law favors settlement of disputed claims, particularly in the context of complex class actions."); *Maley v.*

*Del Global Tech. Corp.*, 186 F. Supp. 2d 358, 360 (S.D.N.Y. 2002) ("The law favors settlements of class actions no less than of other cases.") (citation omitted).

The test for the exercise of the Court's discretion in approving a settlement of a class action pursuant to Rule 23 is whether the settlement, taken as a whole, is fair, adequate and reasonable. *Protective Committee for Independent Stockholders of TMT Trailer Ferry. Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968). Approval of a proposed class action settlement is a matter of discretion for the trial court. *Newman v. Stein*, 464 F.2d 689, 692 (2d Cir. 1972). However, the trial court should not compare the proposed settlement against the potential recovery following trial. *Grinnell*, 495 F.2d at 462 ("Such procedure would emasculate the very purpose for which settlements are made."). *Uniondale Beer Co., Inc. v. Anheuser-Busch, Inc*., 1989 WL 6377, at *1 (E.D.N.Y. Jan. 4, 1989) ("Court's task is not to engage in a trial of the merits nor to attempt to resolve all disputed facts, but to evaluate the relative strengths of plaintiffs' claims and come to an intelligent and objective decision."). It is also inappropriate to evaluate a class action settlement against a hypothetical alternative settlement.

> The inquiry is perhaps best stated in the recent decision by Judge Ziegler, approving certain partial settlements in *In re Flat Glass Antitrust Litig*: "The test is whether the settlement is adequate and reasonable and not whether a better settlement is conceivable." *In re Flat Glass Antitrust Litig.*, slip op. at 6 (W.D. Pa. Feb. 9, 2000).

*In re Vitamins*, 2000 U.S. Dist LEXIS 8931, at *19 (D.D.C. Mar. 30, 2000).

An examination of the factors set forth in *Grinnell* demonstrates that the Settlement is fair, reasonable and adequate.

## A. RANGE OF REASONABLENESS IN LIGHT OF POSSIBLE RECOVERY

The total financial benefits of the Settlement exceed the $3,323,811.60 of UMFs collected by CONA from Settlement Class members during the Class Period. Aggregating the Settlement proceeds that CONA agreed to pay to all Settlement Class members who submitted

valid Claim Forms ($2,725,525.51), the Settlement costs and fees to be borne by CONA ($155,000.00), the attorneys' fees CONA has agreed to separately pay to Class Counsel ($750,000.00), and the incentive award that CONA has agreed to separately pay Plaintiff ($7,500.00), the value of the Settlement is reasonably valued at $3,638,025.51.  Stated differently, any Settlement Class member choosing to participate in the Settlement had the opportunity to individually receive a refund of 82% (or more) of each UMF charged or assessed by CONA, and over 100% in value when other benefits of the Settlement are considered.  *See Mills v. Elec. Auto-Lite Co*., 396 U.S. 375, 393-94 (1970); *Johnston v. Comerica Mortgage Corp*., 83 F.3d 241, 246 (8th Cir. 1996) ("The award to the class and the agreement on attorney fees represent a package deal.  Even if the fees are paid directly to the attorneys, those fees are still best viewed as an aspect of the class' recovery."); *In re Excess Value Ins. Coverage Litig*., 598 F. Supp. 2d 380, 386 (S.D.N.Y. 2005).

In addition, because CONA has ceased charging UMFs all Settlement Class members will benefit from not having to pay these fees in the future.  This is another substantial benefit of the Settlement.  Using only the UMFs that CONA charged during the 35-month Class Period as a guide, the Settlement Class could save more than $3 million in UMFs during the next three years.

While even class action settlements that secure less, and even substantially less, than the classes' overall injury can be approved, *Grinnell*, 495 F.2d at 455, the Settlement provides benefits to the Settlement Class that are favorably compared to any "possible recovery."  That is especially true considering that CONA has asserted eleven affirmative defenses, stated its intention to oppose class certification, was likely to seek summary judgment disposition and would have disputed claims litigated at trial and possibly on appeal.

**B.**     **ABILITY OF CONA TO WITHSTAND A GREATER JUDGMENT**

It is not disputed that CONA could withstand a recovery greater in amount than recovered by the Settlement.  Nevertheless, this factor does not factor against Settlement approval given that the total financial benefits of the Settlement exceed the $3,323,811.60 of UMFs collected by CONA from Settlement Class members during the Class Period.

**C.**     **OPINIONS OF COUNSEL**

Class Counsel possess substantial experience in litigating and settling complex litigation and consumer class actions. *See* Tusa Decl. at ¶6; Guglielmo Decl. at ¶2.  In their opinion, the Settlement is fair, reasonable and adequate.  CONA's counsel is likewise experienced in defending consumer class actions, and has endorsed approval of the Settlement.

Experienced counsel's opinions are entitled to great weight in determining whether to approve the Settlement.  *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982).  As aptly stated by Judge Pollack:

> [T]he determination of what amount of money constitutes a fair settlement is not a matter of mathematical science.  On the one hand perhaps plaintiff's counsel have obtained more ... than a jury would award; on the other hand, it may be less.  The court is in no position to substitute its judgment for that of honest and competent attorneys, who ... have made a determination that the settlement represents a fair and realistic appraisal of their clients' chances of ultimate success.

*Republic Nat'l Life Ins. Co. v. Beasley*, 73 F.R.D. 658, 668 (S.D.N.Y. 1977) (citation omitted). Based on the ability of Settlement Class members to benefit in an amount that exceeds their actual losses, CONA's decision to cease charging UMFs entirely and the uncertainty inherent in pursuing this matter through trial and appeals, Class Counsel endorse the Settlement as fair, reasonable and adequate.

**D.     COMPLEXITY, EXPENSE AND LIKELY DURATION OF THE LITIGATION**

Even when the subject of a class action is not overly complex, the expense and expected

duration of the case in the trial and appeals courts can weigh in favor of settlement approval:

> First, the complexity, expense, and duration of continued litigation likely would
> be considerable.  … Moreover, the parties have not yet completed discovery,
> making continued litigation extremely costly.  … Continued litigation would
> necessarily involve substantial costs and a very uncertain result in a future
> complex and potentially lengthy trial with difficult liability issues.

*In re Sterling Foster & Co.*, 2006 WL 3193744, at *4.  *Cf. Steinberg v. Nationwide Mut. Ins. Co.*,

619 F.Supp.2d 219, 223 (E.D.N.Y. 2009) (Spatt, J.) ("Although the underlying facts were not

particularly complex, the procedural history of this case--including extensive motion practice,

discovery, and complicated negotiations--reflects the considerable magnitude of this litigation.").

Although the parties have already expended considerable effort litigating defendants'

motions to dismiss and have commenced the discovery process, considerable additional

discovery remained pending.  That process would have been arduous and contested, as Plaintiff

had filed three motions to compel document, interrogatory and deposition discovery and was

awaiting decision on those motions when the Settlement was initially executed on July 2, 2010.

After discovery, the parties would have proceeded to disputed motions for class certification and

summary judgment, followed by trial and potential appeals.

In addition, a number of the issues raised by this class action were complex and novel.

Among such issues already addressed by the parties and the Court involved private liability

under state and common law for violations of the Truth in Savings Act, the liability of a bank

holding company parent for controlling, supervising and profiting the allegedly unlawful acts of

a banking subsidiary, the application of New York General Business Law §349 to non-residents

transacting business in New York and the application of boilerplate deposit agreement terms as

justification to charge fees to bank deposit account holders.  The case promised to also raise complicated technical issues related to CONA computer systems and its ability to identify and defend the assessment of UMFs.  CONA also raised the argument that the identification of putative class members assessed or charged UMFs during the Class Period would have required individual inquiries into the merits of each charge, thereby raising individual issues.

 While Plaintiff and Class Counsel believe they would have ultimately prevailed on these issues, they acknowledge the complexity of the issues, some of which were decided by this Court in CONA favor.  These issues, along with the time and expense to litigate them to final adjudication, further endorse approval of the Settlement.

**E. RISKS INVOLVED IN ESTABLISHING LIABILITY, DAMAGES AND IN MAINTAINING THE CLASS ACTION THROUGH TRIAL**

 In assessing the fairness, reasonableness and adequacy of a settlement, the Court should consider such factors as the "risks of establishing liability," "the risks of establishing damages," and "the risks of maintaining the class action through the trial." *Grinnell*, 495 F.2d at 463 (citations omitted).  Although Class Counsel believe in the merits of Plaintiff's claims, CONA has denied wrongdoing.  As CONA has represented in its motion to dismiss Plaintiff's original complaint, in its answer to Plaintiff's *First Amended Class Action Complaint* and in the Settlement Agreement, CONA believes its acted lawfully at all times and that Plaintiff's claims were without merit.  *See* Settlement Agreement ¶¶ 2, 4, 7, 25; *Docket No. 44*.  CONA has further indicated its intention to oppose a motion by Plaintiff for class certification and was likely to file additional dispositive motions seeking to dismiss Plaintiff's claims.  Plaintiff and Class Counsel acknowledge the uncertainties inherent in all complex, class litigation.  *Weil*, 188 F. Supp. 2d at 264 ("It is axiomatic that anything can happen at trial.").

Balanced against the certainty of recovery, the risk of no recovery or a substantially reduced recovery against CONA after substantial additional litigation, the Settlement is fair and reasonable. *See Lowenschuss v. Bluhdorn*, 613 F.2d 18, 19 (2d Cir. 1980) (settlement approved where further litigation would have been "expensive and protracted" with no guarantee of any relief to class); *Maley*, 186 F. Supp. 2d at 364 ("In assessing the Settlement, the Court should balance the benefits afforded to members of the Class and the immediacy and certainty of a substantial recovery for them against the continuing risks of litigation.").

By virtue of the Settlement, Settlement Class members who submitted a claim will be benefitted above the amount of their actual losses. Balanced against the risk of losing these benefits, and expending substantial additional resources, the Settlement should be approved.

**F.    THE SETTLEMENT WAS NEGOTIATED WITH KNOWLEDGE OF THE STRENGTHS AND WEAKNESSES OF THE CLAIMS INVOLVED**

Under the direction of Magistrate Judge Tomlinson and in compliance with two Scheduling Orders, the parties commenced discovery and Fed. R. Civ. P. 26(a) disclosures in September 2009.  As a result, Class Counsel reviewed CONA's and its parent company's responses to two sets of document requests and interrogatives, supplemented by CONA on two occasions.  Class Counsel was also provided additional discovery and information concerning the Settlement Class, their claims and alleged injuries in connection with the original and amended Settlement Agreements.

Prior to and after filing this action, Plaintiff and Class Counsel had investigated Plaintiff's claims concerning the assessment of UMFs, reviewed public documents and reports concerning Plaintiff's claims made available by federal and state banking and consumer protection regulators and served ten freedom of information requests to obtain information on topics including CONA's assessment of fees on its deposit account holders, other Settlement

Class member claims and complaints against CONA and CONA's and its parent's acquisition of North Fork Bancorporation.

The discovery and information obtained and reviewed by Class Counsel provided more than enough information to determine that the Settlement is fair, reasonable and adequate. The comments of the *Becher* court, approving a class settlement, are equally apt here:

> In sum, counsel for both sides had full information about the strengths and weaknesses of plaintiffs' case and about the risks of further proceedings. The case was energetically and persistently litigated by experienced counsel, and the resulting settlement was reached on the brink of trial after arms-length negotiations before a respected neutral mediator.

*Becher v. Long Island Lighting Co.*, 64 F. Supp. 2d 174, 181 (E.D.N.Y. 1999).

**G.    THE RESPONSE OF THE CLASS
SUPPORTS THE APPROVAL OF THE SETTLEMENT**

Although notice was mailed to in excess of 43,000 Settlement Class members, none objected to the Settlement and only five class members have requested exclusion. *See* Declaration of Robin Niemiec ¶10 (11/29/10). In addition, after being provided the notice required by the Class Action Fairness Act, CONA's federal banking regulator has not objected to the Settlement. *See* Settlement Agreement ¶¶ 16-18. The Settlement Classes' response to the Settlement, after receiving the Court-approved Notice, is a strong *indicia* of the fairness and reasonableness of the Settlement:

> The Class has reacted favorably to this settlement. Only two Class members chose to object at the Fairness Hearing, and neither objection focused on the recovery for Class members. Moreover, to date, the Court is only aware of thirty-three Class members who opted out of the Settlement, which is a *de minimis* number. Therefore, the Class appears to approve of the Settlement.

*Weil*, 188 F. Supp. 2d at 263. *Accord Wal-Mart Stores*, 396 F.3d at 118 ("'If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.'" (quoting Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* (4th ed. 2002), §11.41, at 108; *In re Metlife Demutualization Litig.*, 689 F.Supp.2d 297, 333 (E.D.N.Y.

2010) (low numbers of objections and opt-outs endorse approval).

In contrast, 572 Settlement Class Members submitted Claim Forms to participate in the Settlement's financial recovery. *See* Declaration of Robin Niemiec ¶12 (11/29/10). The response of the Settlement Class suggests that the Settlement is fair, reasonable and adequate.

## IV.    PLAINTIFF SHOULD BE PAID THE AGREED INCENTIVE AWARD

Upon the Settlement Effective Date, CONA has agreed to pay Plaintiff an incentive award in the amount $7,500.00 <u>in addition to</u> the settlement proceeds made available to the Settlement Class. Settlement Agreement ¶37(b). As such, the incentive payment to Plaintiff will not reduce the recover for any Settlement Class member. The award is a recognition of Plaintiff's essential efforts resulting in the Settlement that benefitted all Settlement Class members. Incentive awards to named class action plaintiffs are often approved in this District. *See Dupler v. Costco Wholesale Corp.*, 705 F.Supp.2d 231, 243-44 (E.D.N.Y. 2010) (citing decisions). That result is even more true when the incentive award is being paid over and above the settlement consideration to the class, as is true here. *See Id.*, at 246 ("The Court notes with approval that Costco has agreed to pay these incentive awards directly, and therefore the awards will not diminish the recovery of any other class members.").

The amount of the requested incentive award for Plaintiff is reasonable and has been approved in other class actions. *See Chin v. RCN Corp.*, 2010 WL 3958794, at *6 (S.D.N.Y. Sept. 8, 2010) (approved incentive payments often in excess of $10,000); *Bellifemine v. Sanofi-Aventis U.S. LLC*, 2010 WL 3119374, at *7 (S.D.N.Y. Aug. 6, 2010) (approving incentive awards of $25,000 to $75,000; "The service payments to the Named Plaintiffs [] are justified in light of the Named Plaintiffs' willingness to devote their time and energy to this civil rights representative action and reasonable in light of the overall benefit conferred on the Class."); *In re*

*Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 131 (S.D.N.Y. 2009) (incentive awards of $45,000, $35,000, and lesser amounts were "within the range of what other courts have found to be reasonable, although on the higher end"); *Bricker v. Planet Hollywood N.Y., L.P.*, 2009 WL 2603149, at *2 (S.D.N.Y. Aug. 13, 2009) (approving $7,500 incentive award for named plaintiff).

But not for the initiative, diligence, hard work and persistence of Mr. Gunther, the Settlement Class would not be sharing the Settlement benefits paid by CONA.  He has earned and is entitled to receive the requested incentive award.

<u>**CONCLUSION**</u>

Therefore, for all the reasons stated above, Plaintiff respectfully request that the Court grant final approval pursuant to Fed. R. Civ. P. 23(e) to the September 15, 2010 Amended Class Action Settlement Agreement and enter the proposed Final Order and Judgment, jointly submitted by the Settling Parties on November 29, 2010.

Dated: November 29, 2010
New York, New York

Respectfully submitted**,**

**WHALEN & TUSA, P.C.**
 **/s/ Joseph S. Tusa**
Joseph S. Tusa (JT 9390)
33 West 19th Street
Tel. (212) 400-7100
Fax. (212) 658-9685
joseph.tusapc@gmail.com

**TUSA P.C**.
  **/s/ Joseph S. Tusa**
Joseph S. Tusa (JT 9390)
236 East 28th Street, #3C
New York, NY  10016
Tel. (646) 895-9802
joseph.tusapc@gmail.com

**SCOTT+SCOTT LLP**
Joseph P. Guglielmo (JG 2447)
500 Fifth Avenue, 40th Floor
New York, NY 10110
Tel. (212) 223-6444
Fax. (212) 223-6334
jguglielmo@scott-scott.com

***Attorneys for Plaintiff
and Class Counsel***