# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ERIC GUNTHER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>- against -<br><br>CAPITAL ONE, N.A. d/b/a CAPITAL ONE BANK,<br><br>Defendant. | Case No. 09-cv-2966(ADS)(AKT)<br><br>Arthur D. Spatt, USDJ<br>A. Kathleen Tomlinson, USMJ |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S AND CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS

**TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................................. 1

II.   PROCEDURAL HISTORY ............................................................................. 3

III.  TERMS OF THE SETTLEMENT .................................................................. 5

   A.   Undeliverable Mail Fee Refunds to Settlement Class Members ............................ 5

   B.   Payment by CONA of Notice Costs and Settlement Administration Fees ............. 6

   C.   Payment by CONA of the Settlement Classes' Attorneys' Fees and Costs ........... 7

   D.   Approval of an Incentive Payment to Plaintiff Is Warranted ................................ 7

   E.   Undeliverable Mail Fee Claims Will Be Released ................................................. 8

IV.   ARGUMENT .................................................................................................... 8

   A.   Class Counsel's Request for Attorneys' Fees and Costs Is Fair and
        Reasonable ........................................................................................................... 8

      1.   The Parties Have Agreed, Subject to Court Approval, to Award Class
           Counsel a Lump Sum Amount Which Is Independent from the Benefit
           Obtained for the Class .................................................................................... 9

      2.   The Agreed Fee Carries a Presumption of Reasonableness ............................. 10

      3.   Class Counsel's Fee Request Is Fair and Reasonable ..................................... 13

   B.   The *Goldberger* Factors Show that the Requested Fee Is Reasonable ................. 17

      1.   The Time and Labor Expended by Counsel/Magnitude and
           Complexities of the Litigation ....................................................................... 17

      2.   The Risk of the Litigation .............................................................................. 20

      3.   The Quality of Representation ........................................................................ 21

      4.   The Requested Fee in Relation to the Settlement ........................................... 22

      5.   Class Counsel Request a Reasonable Hourly Rate ......................................... 23

      6.   Public Policy Considerations .......................................................................... 24

C.  The Requested Fee Is Reasonable After Cross-Checking with the Lodestar Method ................................................................................................ 24

D.  Response of the Class to the Requested Attorneys' Fee ..................................... 26

IV.  CONCLUSION .................................................................................................. 27

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alleyne v. Time Moving & Storage, Inc.*,
    264 F.R.D. 41 (E.D.N.Y. 2010) ..................................................................................22

*Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cty. of Albany and Albany*
    *Bd. of Elections*,
    522 F.3d 182 (2d Cir. 2008)......................................................................................25

*Bezio v. Gen. Elec. Co.*,
    655 F. Supp. 2d 162 (N.D.N.Y. 2009)..............................................................10, 26

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980)..................................................................................................13

*Cohn v. Nelson*,
    375 F. Supp. 2d. 844 (E.D. Mo. 2005).....................................................................11

*DeHoyos v. Allstate Corp.*,
    240 F.R.D. 269 (W.D. Tex. 2007) ...........................................................................10

*deMunecas v. Bold Food, LLC*,
    No. 09 Civ. 00440, 2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010) ........................26

*Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)......................................................................................20

*Dupler v. Costco Wholesale Corp.*,
    705 F. Supp. 2d 231 (E.D.N.Y. 2010) ...............................................8, 10, 13, 26

*Goldberger v. Integrated Resources, Inc.*
    209 F.3d 43 (2d Cir. 2000)..........................................................2 16, 24, 25

*Gunther v. Capital One, N.A.*,
    703 F. Supp. 2d 264 (E.D.N.Y. 2010) .......................................................................3

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983)................................................................................................8, 9

*In re Apple Computer, Inc. Deriv. Litig.*,
    No 06-4128, 2008 WL 4820784 (N.D. Cal. Nov. 5, 2008) .....................................11

*In re AXA Fin., Inc.*,
    No. 18268, 2002 WL 1283674 (Del. Ch. May 22, 2002).......................................11

*In re Comverse Tech. Inc. Sec. Litig*,
   No. 06-cv-1825, 2010 WL 2653354 (E.D.N.Y. June 24, 2010)........................................20, 21

*In re Excess Value Ins. Coverage Litig.*,
   598 F. Supp. 2d 380 (S.D.N.Y. 2005)...................................................................................14

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*,
   MDL No. 901, 1992 WL 226321 (C.D. Cal. June 10, 1992) ..................................................11

*In re Gilat Satellite Networks, Ltd.*,
   No. CV-02-1510, 2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007) ..........................................26

*In re Indep. Energy Holdings PLC*,
   No. 00 Civ. 6689, 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) .......................................23

*In re KeySpan Corp. Sec. Litig.*,
   CV 2001-58522005, U.S. Dist. LEXIS 29068 (E.D.N.Y. Aug. 25, 2005)............................23

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
   No. 02 MDL 1484, 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007)..............................................23

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
   No. 06 Civ. 5173, 2008 WL 1956267 (S.D.N.Y. May 1, 2008).......................................9, 12

*In re Sterling Foster & Co., Inc.*,
   No. 99 cv 2789, 2006 WL 3193744 (E.D.N.Y. Oct. 31, 2006) .............................................22

*In re Sumitomo Copper Litig.*,
   74 F. Supp. 2d 393 (S.D.N.Y. 1999)......................................................................................19

*In re Telik, Inc. Secur. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008).....................................................................................22

*In re Visa Check/Mastermoney Antitrust Litig*,
   297 F. Supp. 2d 503 (E.D.N.Y. 2003) ..............................................................................19, 25

*In re Warner Communications Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985)..........................................................................................23

*In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*,
   364 F. Supp. 2d 980 (D. Minn. 2005).....................................................................................25

*Ingram v. Coca-Cola Co.*,
   200 F.R.D. 685 (N.D. Ga. 2001)............................................................................................11

*Johnson v. Georgia Hwy. Exp., Inc.*,
   488 F.2d 714 (5th Cir. 1974) ...................................................................................................9

*Johnston v. Comerica Mortgage Corp.*,
    83 F.3d 241 (8th Cir. 1996) ............................................................................13

*M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.*,
    671 F. Supp. 819 (D. Mass. 1987) ....................................................................9

*Maley v. Del Global Tech. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002)..............................................................19

*Masters v. Wilhelmina Model Agency, Inc.*,
    473 F.3d 423 (2d Cir. 2007).......................................................................14, 22

*Matter of Cont'l Ill. Sec. Litig.*,
    962 F.2d 566 (7th Cir. 1992) ...........................................................................10

*McBean v. City of New York*,
    233 F.R.D. 377 (S.D.N.Y. 2006) .......................................................8, 9, 11, 12

*McDaniel v. County of Schenectady*,
    595 F.3d 411 (2d Cir. 2010).................................................................16, 25, 26

*Merrill Lynch Tyco Research Sec. Litig.*,
    249 F.R.D. 124 (S.D.N.Y. 1998) .....................................................................21

*Mills v. Elec. Auto-Lite Co.*,
    396 U.S. 375 (1970)...................................................................................8, 13

*Parker v. Time Warner Entertainment Co., L.P.*,
    631 F. Supp. 2d 242 (E.D.N.Y. 2009) ...................................................13, 21, 22

*Slomovics v. All for a Dollar, Inc.*,
    906 F. Supp. 146 (E.D.N.Y. 1995) ..................................................................13

*Steinberg v. Nationwide Mut. Ins. Co.*,
    612 F. Supp. 2d 219 (E.D.N.Y. 2009) .........................................................10, 14

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)........................................................................12, 13

*Weiss v. Drew Nat'l Corp.*,
    465 F. Supp. 548 (S.D.N.Y. 1979) ..................................................................13

*Williamsburg Fair Hous. Comm. v. N.Y. City Hous. Auth.*,
    No. 76 CIV 2125, 2005 WL 736146 (S.D.N.Y. Mar. 31, 2005) ..........................23

*Williamsburg Fair Hous. Comm. v. New York City Hous. Auth.*,
    76 Civ. 2125, 2005 U.S. Dist. LEXIS 5200 (S.D.N.Y. April 4, 2005)...................23

**STATUTES, RULES AND REGULATIONS**

New York General Business Law §349 ................................................................................. 3, 18

Federal Rules of Civil Procedure
    Rule 23(h) ........................................................................................................................ 1, 9

Plaintiff Eric Gunther ("Plaintiff"), by and through his counsel and Court-appointed Class Counsel, respectfully submits this Memorandum of Law in support of Plaintiff's and Class Counsel's Motion for Attorneys' Fees and reimbursement of costs Pursuant to Rule 23(h) of the Federal Rules of Civil Procedure. For the reasons set forth below as well as those enumerated in Plaintiff's and the Classes' Memorandum of Law in Support of Final Approval of Class Action Settlement, Plaintiff and Class Counsel respectfully requests that their motion for the payment of uncontested attorneys' fees and reimbursement of costs be granted.

## I.       INTRODUCTION

As set forth herein, Plaintiff's and Class Counsel's request for attorneys' fees and reimbursement of expenses should be granted along with approval of the Amended Class Action Settlement Agreement (the "Settlement Agreement" or "Settlement") between Plaintiff, the certified Settlement Class and defendant Capital One, N.A. d/b/a/ Capital One Bank ("CONA"). The parties' agreement regarding fees and expenses is appropriate and consistent with the federal rules and the law within this Circuit and District. *See* Fed. R. Civ. P. 23(h). The Settlement provides that Class Members who validly submit proof of claim forms will receive $12.30 for each $15.00 Undeliverable Mail Fee ("UMF") (82% or more of each UMF) that was charged during the Class Period. Additionally, the Settlement provides that Defendant alone pay the costs of notice and administration of the Settlement, Class Counsel's reasonable attorneys' fees and expenses and an incentive award to the named Plaintiff Eric Gunther. Notably, these combined benefits ***exceed 100% of the total damages*** which Plaintiff and the Class could obtain if the action were to proceed to a judgment.

Class Counsel's fees and costs were negotiated separately, after the terms of the Settlement Class members' benefits were negotiated.  After arm's-length negotiation between Class Counsel and CONA's counsel, CONA agreed to pay Class Counsel up to $750,000.00 in attorneys' fees and expenses, subject to Court approval, separate and apart from the settlement remedies paid by CONA to the Settlement Class.  The amount of attorneys' fees and expenses for Class Counsel, as is true for the Settlement generally, was negotiated by sophisticated counsel familiar with complex and class action litigation. The fees and expenses requested by Class Counsel are fair and reasonable.

Court approval of Class Counsel's fees and expenses is appropriate.  First, CONA has agreed to pay the award in addition to the Settlement remedies paid to Settlement Class members, and thus, the fee award will not reduce the benefits of the Settlement to the Settlement Class.  Further, fee awards negotiated at arm's length by sophisticated counsel are afforded great weight and judicial deference.  Finally, the fee and expense award is eminently reasonable under this Circuit's "presumptively reasonable fee" (formerly lodestar) cross-check, under which a court takes into account the case-specific reasonableness factors articulated in *Goldberger v. Integrated Resources, Inc.*:  "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.'"  209 F.3d 43, 50 (2d Cir. 2000).  Each of the *Goldberger* factors supports the reasonableness of the requested award here.  Indeed, when accounting for the Settlement Fund, the costs of notice and administration as well as the attorneys' fees, the total benefit afforded to the Settlement Class exceeds 100% of the total damages which could be obtained by Settlement Class

members.  Accordingly, Plaintiff respectfully submits that Class Counsel's request for an award of their attorneys' fees and reimbursement of expenses be approved.

## II.    PROCEDURAL HISTORY

Plaintiff incorporates herein the procedural history section of the accompanying Memorandum of Law in Support of Plaintiff's Motion for Final Approval of Class Action Settlement and assumes the Court's familiarity with the case from its prior decisions and orders.  In the interest of brevity, Plaintiff will only describe the matters relevant to Class Counsel's request for fees and reimbursement of expenses, and respectfully refer the Court to that memorandum for a fuller background discussion.

On July 10, 2009, Plaintiff filed this lawsuit as a putative class action against CONA and its parent, Capital One Financial Corporation ("COF"), alleging violations of consumer protection statutes in New York, New Jersey, and Connecticut; breach of contract; and a Declaratory Judgment Act claim.

On April 8, 2010, this Court granted in part and denied in part CONA's motion to dismiss, and granted COF's motion to dismiss.  *See Gunther v. Capital One, N.A.*, 703 F. Supp. 2d 264 (E.D.N.Y. 2010) (ECF No. 34).  The Court sustained Plaintiff's breach of contract claims based on the assessment of the UMFs charged or assessed by CONA to Settlement Class members' deposit (checking or savings) accounts.  The Court dismissed Plaintiff's breach of contract claims based premised on violations of the federal Truth in Savings Act.  The Court dismissed Plaintiff's claims alleging violations of the Connecticut Unfair Trade Practices Act based on Plaintiff's standing to assert those claims.  It dismissed without prejudice Plaintiff's claims under New York General Business Law §349, acknowledging that Plaintiff may have claims, even as a non-

resident of New York, under that statute based on documents submitted in opposition to the dismissal motions, and directed Plaintiff to filed an amended complaint.  Plaintiff, by and through Class Counsel, filed the operative First Amended Class Action Complaint on May 17, 2010.

After months of negotiation beginning in November 2009, on June 3, 2010, the parties informed the Court that they had agreed to the principal terms of settlement. Following an intensive effort to complete negotiations and draft the papers memorializing their agreement, the parties executed the Settlement Agreement on July 2, 2010.  This Court granted preliminary approval to the Settlement and preliminary certified the Settlement Class and Joseph S. Tusa and Joseph Guglielmo as Class Counsel on July 20, 2010.  ECF No. 48.

After distribution of the Notice and Claim Form to the initial group of 40,118 Settlement Class members, further investigation by both Class Counsel and Defendant's counsel discovered that the Settlement Class list was both incomplete and contained errors both as to the amount and number of UMFs charged to certain Settlement Class members.  To resolve these issues, counsel for the Class and CONA negotiated the amended Settlement Agreement, Notice and Claim Form that, among other things, required CONA to submit additional and corrected Settlement Class member lists and Undeliverable Fee Data to Class Counsel and the Settlement Administrator.  CONA was further required to pay for mailing of the amended Notice and Claim Form to Settlement Class members omitted from the initial mailing and to reset the deadlines for all Settlement Class members to submit claims against the Settlement proceeds to be paid by CONA.  The amended Settlement Agreement and exhibits were submitted to the Court on

September 16, 2010.  ECF No. 53.  The Court entered an Order on September 24, 2010 extending its preliminary approval of the Settlement to the amended Settlement Agreement.  *See* ECF No. 54.  Class Counsel did not request additional fees in connection with their work related to the notice and claims process or for negotiating and obtaining approval of the amended Settlement Agreement.

## III.   TERMS OF THE SETTLEMENT

### A.   Undeliverable Mail Fee Refunds to Settlement Class Members

As part of the Settlement, CONA has agreed to refund to Settlement Class members who validly submit a proof of claim form, 82% of each Settlement Class member's UMFs assessed by CONA in New York, New Jersey and Connecticut during the thirty-five month Class Period when the mail at issue was delivered.  CONA represented in sworn interrogatory responses that the total, un-refunded amount of UMFs assessed by CONA against Settlement Class members was $3,277,792.31.  Subsequent to those responses, CONA determined that it had assessed Settlement Class members an additional $46,019.29 in un-refunded UMFs, for a total of $3,323,811.60.  Thus, it has agreed to pay refunds up to $2,725,525.51 to Settlement Class members who submit timely and valid claim forms.  *See* Amended Settlement Agreement, ¶¶30, 31.

Notably, during the pendency of this lawsuit, CONA ceased charging UMFs. Amended Settlement Agreement, ¶3.  As a result, the alleged conduct challenged in this lawsuit is incapable of repetition for all Settlement Class members, many of whom remain deposit account clients of CONA.  Plaintiff and Class Counsel believe the cessation of the disputed fee by CONA provides a substantial and valuable additional benefit to the Settlement Class.

**B.      Payment by CONA of Notice Costs and Settlement Administration Fees**

In addition to the $2,725,525.51 in settlement proceeds made available to all Settlement Class members by CONA, CONA has agreed to pay all the costs associated with the administration of this Settlement which includes providing mailed notice to the all Settlement Class, establishing a website for class members to view and print settlement documents and submit claims and the payment of fees and costs associated with the Settlement Administrator who will process the claims received from class members.    Amended Settlement Agreement, ¶¶31, 34.    Class Counsel separately undertook the expense to publish the Court-approved Notice in a national press release.

Consistent with the terms of the Settlement Agreement, the parties selected Rust Consulting, Inc. an experienced and nationally recognized organization, as the Settlement Administrator.    The experience and qualifications of Rust Consulting to serve in the capacity of Settlement Administrator are discussed on its website at www.rustconsulting.com.    The Settlement Administrator printed and mailed Notice to approximately 43,000 Settlement Class members. *See* Affidavit of Eric Miller (Sept. 15, 2010) at ¶5; ECF No. 52; Declaration of Robin Niemiec (Nov. 29, 2010).    Additionally, the Settlement Administrator established a settlement website (http://www.CapOneMailFeeSettlement.com) to receive and review claims filed by Settlement Class members, provide information to the Settlement Class and to receive requests for exclusion.    Settlement Class members had the opportunity to submit their claims or requests for exclusion by mail and by online filing.    Additionally, the Settlement Administrator established a toll-free number for Settlement Class members' inquiries.    Amended Settlement Agreement, ¶¶29, 30, 32, 34; Amended Settlement

Agreement, Ex. A (proposed Preliminary Approval Order).  The proffered Settlement Administrator estimates that the costs to administer the Settlement will be approximately $155,000.00.

    **C.**    **Payment by CONA of the Settlement Classes' Attorneys' Fees and Costs**

In addition to the $2,725,525.51 in settlement proceeds made available to all Settlement Class members by CONA and the payment by CONA of all costs of settlement administration and notice, CONA has agreed to pay reasonable attorneys' fees and costs awarded by the Court to Class Counsel in an amount not to exceed $750,000.00. Amended Settlement Agreement, ¶¶31, 37.  Thus, when taking into account the settlement proceeds, the costs of notice and attorneys' fees, the entire fund available through the settlement is approximately $3,638,025.51, which exceeds 100% of the potential damages that could be obtained if the action is tried to resolution.

    **D.**    **Approval of an Incentive Payment to Plaintiff Is Warranted**

The Settlement provides that subject to Court approval, CONA will pay the named Plaintiff, Eric Gunther, a $7,500.00 incentive award in recognition of the time he expended and his essential efforts in bringing about this Settlement which include the investigation and commencement of this action through and including his substantial and material assistance to bring about this Settlement.  The proposed incentive award is in addition to, and separate from, the $2,725,525.51 made available to Settlement Class members and in addition to settlement administration and attorneys' fees paid by CONA. Amended Settlement Agreement, ¶¶31, 37.  Like the proposed attorneys' fees, the proposed incentive award was negotiated at arm's length, does not come out of a common fund, and is reasonably based on the participation of Mr. Gunther in the

prosecution of the case. *See*, *e.g.*, *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 245-46 (E.D.N.Y. 2010).

> **E.      Undeliverable Mail Fee Claims Will Be Released**

The Settlement provides that Settlement Class members will receive notice of this Settlement and their rights to receive refunds of UMFs, object or seek exclusion from this Settlement.   Amended Settlement Agreement, ¶29.   Those Settlement Class members who do not timely request exclusion will release CONA from all claims related to the UMFs assessed by CONA during the Class Period.   Amended Settlement Agreement, ¶¶26(q), 26(r), 36.  No Settlement Class member is releasing any claims outside the Class Period, or related to any fee other than the UMF.

## IV.   ARGUMENT

> **A.      Class Counsel's Request for Attorneys' Fees and Costs Is Fair and Reasonable**

Courts encourage parties to litigation to include attorneys' fees in settlement agreements.   "Ideally, of course, litigants will settle the amount of a fee."   *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).  And where that fee is paid directly by a defendant, entirely independent of the money awarded to the class, the oversight role of the court is "greatly reduced."  *Dupler*, 705 F. Supp. 2d at 243; *see also McBean v. City of New York*, 233 F.R.D. 377, 392 (S.D.N.Y. 2006).   Attorneys' fees are recoverable where "the litigation has conferred a substantial benefit on the members of an ascertainable class." *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 393-94 (1970).

Here, CONA has agreed to pay Class Counsel a fixed sum of $750,000.00 in attorneys' fees and costs.   This payment is completely separate from, and will have no effect on, the amount to be paid to members of the Settlement Class.   Further,

reimbursement of Class Counsel's fees and expenses were not negotiated until after the terms and conditions of the Settlement had been negotiated.  As such, this Court should give deference to the arm's-length negotiations of the adverse parties in this suit.

**1.  The Parties Have Agreed, Subject to Court Approval, to Award Class Counsel a Lump Sum Amount Which Is Independent from the Benefit Obtained for the Class**

The Federal Rules of Civil Procedure expressly authorize that "the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  Federal courts at all levels encourage litigants to resolve fee issues by agreement whenever possible.  As the United States Supreme Court explains, "[a] request for attorney's fees should not result in a second major litigation.  Ideally, of course, litigants will settle the amount of a fee." *Hensley*, 461 U.S. at 437; *see also Johnson v. Georgia Hwy. Exp., Inc.*, 488 F.2d 714, 720 (5th Cir. 1974) ("In cases of this kind, we encourage counsel on both sides to utilize their best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorney's fees."); *M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 829 (D. Mass. 1987) ("Whether a defendant is required by statute or agrees as part of the settlement of a class action to pay the plaintiffs' attorneys' fees, ideally the parties will settle the amount of the fee between themselves.").

Accordingly, courts regularly approve agreed-upon attorneys' fees awards paid by the defendant, rather than the class members, especially where that amount is independent of the benefit obtained for the class.  *See*, *e.g.*, *McBean v. City of N.Y.*, 233 F.R.D. 377, 392 (S.D.N.Y. 2006) (granting class counsel full amount of fees agreed to by defendant where the attorneys' fees were separate from the class settlement and did not diminish the class settlement); *In re Sony SXRD Rear Projection Television Class Action*

*Litig.*, No. 06 Civ. 5173, 2008 WL 1956267, at *15-*16 (S.D.N.Y. May 1, 2008) (same); *Dupler*, 705 F. Supp. 2d at 245 (same); *Bezio v. Gen. Elec. Co.*, 655 F. Supp. 2d 162, 167-68 (N.D.N.Y. 2009) (same); *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 322 (W.D. Tex. 2007) (same).  *See also Steinberg v. Nationwide Mut. Ins. Co.,* 612 F. Supp. 2d 219, 224 (E.D.N.Y. 2009) (Spatt, J.) (quoted below).

Here, CONA agreed to pay Class Counsel a lump sum of $750,000.00 in attorneys' fees and litigation expenses, including the cost of notice.  This award of attorneys' fees and costs is completely separate and apart from the class settlement, and the relief to the Class will not be reduced as a result of these payments.  Furthermore, attorneys' fees were not negotiated or discussed until after agreement was reached between the parties on all other terms of the settlement.  The agreed amount of attorneys' fees was negotiated by sophisticated counsel familiar with complex and class action litigation.  Thus, as the attorneys' fees award requested in this case was agreed to by all parties and does not diminish the Settlement Class relief, this Court should grant Class Counsel the requested award.

### 2.    The Agreed Fee Carries a Presumption of Reasonableness

In this case, the fee arrangement was negotiated under the best of market conditions – an arm's-length negotiation – a process which the courts have encouraged. *Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 568-70 (7th Cir. 1992) (market factors, best known by the negotiating parties themselves, should determine the quantum of attorneys' fees).  The virtue of a fee negotiated by the parties at arm's length is that it is, essentially, a market-set price.  CONA has an interest in minimizing the fee; Class Counsel have an interest in maximizing the fee to compensate them (as the case law encourages) for their risk, innovation, and creativity; and the negotiations are informed

by the parties' knowledge of the work done and result achieved and their views on what the court may award if the attorneys' fees award were litigated. Because the fee arrangement in this case was negotiated by experienced counsel at arm's length, judicial deference to the parties' fee agreement is warranted. *In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, MDL No. 901, 1992 WL 226321, at *4 (C.D. Cal. June 10, 1992) (stating that court should be reluctant to disturb agreed-upon attorneys' fees where class counsel negotiated fee with sophisticated defense counsel who were familiar with case, risks, amount and value of class counsel's time, and nature of result obtained for class), *appeal dismissed for class member's lack of standing*, 33 F.3d 29 (9th Cir.1994), *superseding* 19 F.3d 470 (9th Cir.); *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 695 (N.D. Ga. 2001) (giving "substantial weight to a negotiated fee amount"); *In re Apple Computer, Inc. Deriv. Litig.*, No 06-4128, 2008 WL 4820784, at *3 (N.D. Cal. Nov. 5, 2008) ("A court should refrain from substituting its own value for a properly bargained-for agreement."); *Cohn v. Nelson*, 375 F. Supp. 2d. 844, 861 (E.D. Mo. 2005) ("[W]here, as here, the parties have agreed on the amount of attorneys' fees and expenses, courts give the parties' agreement substantial deference."); *In re AXA Fin., Inc.*, No. 18268, 2002 WL 1283674, at *7 (Del. Ch. May 22, 2002) ("Where, as here, the fee is negotiated after the parties have reached an agreement in principle on settlement terms and is paid in addition to the benefit to be realized by the class, this court will also give weight to the agreement reached by the parties in relation to fees.").

Additionally, as explained in *McBean*, 233 F.R.D. 377, a court need not review an application for attorneys' fees with a heightened level of scrutiny where, as here, the parties have contracted for an award of fees that will not be paid from a common fund.

"If money paid to the attorneys comes from a common fund, and is therefore money taken from the class," the court reasoned, "then the Court must carefully review the award to protect the interests of the absent class members." *Id*. at 392 (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc*., 396 F.3d 96, 123-24 (2d Cir. 2005) and *Goldberger*, 209 F.3d 43). "If, however, money paid to the attorneys is entirely independent of money awarded to the class, the Court's fiduciary role in overseeing the award is greatly reduced, because there is no conflict of interest between attorneys and class members." *McBean*, 233 F.R.D. at 392. The *McBean* court concluded that the parties' agreement for attorneys' fees was objectively reasonable because it was the product of arm's-length negotiations. *Id*.

The court, in *Sony SXRD*, used similar reasoning in awarding negotiated fees and expenses of $1.6 million. "[R]egardless of the size of the fee award, class members who apply for recovery under the terms of the Settlement will receive the same benefit; the fee award does not reduce the recovery to the class." 2008 WL 1956267, at *15. Where the attorneys' fees are not awarded from a common fund created for the benefit of the class as a whole, "the danger of conflicts of interest between attorneys and class members is diminished." *Id*. The *Sony SXRD* court concluded that the parties' agreement for attorneys' fees and costs was objectively reasonable because the fees were negotiated at arm's length and negotiations commenced only after agreement had been reached on the substantive terms of the settlement benefitting the class. *Id*.

In this case, the reasonableness of the requested fee is also underscored by the fact that no objectors took issue with the amount of fee award being sought. That fact alone strongly evidences that the fee request is fair and reasonable and has the support of the

class.  *See Slomovics v. All for a Dollar, Inc.*, 906 F. Supp. 146, 150 (E.D.N.Y. 1995)

(citing *Weiss v. Drew Nat'l Corp.*, 465 F. Supp. 548, 551 (S.D.N.Y. 1979)).

### 3.    Class Counsel's Fee Request Is Fair and Reasonable

Even if the negotiated attorneys' fees were deemed to affect the settlement

benefits to the Settlement Class, Class Counsel's fee request would pass muster under

any method of determining reasonableness.  *See Dupler*, 705 F. Supp. 2d at 242-43.  As a

threshold matter, an attorney who is successful in creating a common fund to compensate

a class of similarly situated persons is entitled to a reasonable fee from that fund.  *Boeing

Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  In the Second Circuit, courts may choose

between the lodestar (now "presumptively reasonable fee") and the percentage of the

fund methods for determining that fee, with the clear trend toward the percentage method.

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005).  Under the

percentage method, courts set attorneys' fees as a percentage of the settlement fund.

*Parker v. Time Warner Entertainment Co., L.P.*, 631 F. Supp. 2d 242, 264 (E.D.N.Y.

2009).  Under the lodestar/presumptively reasonable fee method, the number of hours

expended by counsel is multiplied by appropriate hourly rates; the resulting figure may

be adjusted at the court's discretion by a multiplier, taking into account various equitable

factors.  *Id.*

The payment of attorneys' fees to class counsel in addition to the settlement

benefits available to the class is a benefit to class members that increases the overall

value of a class settlement.  *See Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 393-94 (1970);

*Johnston v. Comerica Mortgage Corp.*, 83 F.3d 241, 246 (8th Cir. 1996) ("The award to

the class and the agreement on attorney fees represent a package deal.  Even if the fees

are paid directly to the attorneys, those fees are still best viewed as an aspect of the class'

recovery."); *In re Excess Value Ins. Coverage Litig.*, 598 F. Supp. 2d 380, 386 (S.D.N.Y. 2005).

The Second Circuit, in *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007), held that to compute the basis for an attorney fee award, a court should consider and include the "entire fund available" as a result of the settlement:

> In computing the fees on the basis of claims made against the Fund rather than on the basis of the entire Fund, the District Court recognized a split of authority on the subject. *See generally* 7B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE §1803.1 (2d ed. 2004). In siding with courts that compute fees as a percentage of claims made, the District Court saw the alternative procedure as creating a "windfall" for the attorneys. We disagree. The entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class. An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available, whether claimed or not. We side with the circuits that take this approach. *See Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295 (11th Cir. 1999); *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997).
>
> Our own cases refer to "percentage *of the fund*," *Wal-Mart Stores*, 396 F.3d at 121 (emphasis supplied), and "percentage *of the recovery*," *Goldberger*, 209 F.3d at 47 (emphasis supplied). We take these references to be to the whole of the Fund. Use of the entire Fund as a basis for the computation does not necessarily result in a "windfall" because the court may always adjust the percentage awarded in order to come up with a fee it deems reasonable in light of the *Goldberger* factors. Accordingly, we have held that a "district court did not abuse its discretion in awarding plaintiffs' counsel a generous fee based on a somewhat low percentage of the fund." *Wal-Mart Stores*, 396 F.3d at 123.

*Id.* (emphasis in original).

Notably, the payment of attorneys' fee to Class Counsel by CONA above and in addition to the settlement consideration made available to the Settlement Class will not reduce the settlement recovery for any Settlement Class Member. *See Steinberg*, 612 F. Supp. 2d at 224 ("However, the Court notes with approval that the fee award will not be

drawn from the common fund but will be paid directly by [defendant].  In this regard, the fee award, however substantial, will have no effect on the monetary relief afforded to class members.") (Spatt, J.).

The Second Circuit has explored at length the benefits and drawbacks of both the percentage and lodestar methods in common fund cases:

> The lodestar method is not perfect.  It creates an incentive for attorneys to bill as many hours as possible, to do unnecessary work, and for these reasons also can create a disincentive to early settlement.  Under certain conditions, moreover, lodestar awards can create the near opposite incentive, encouraging attorneys to settle before trial even when it is not in their clients' best interest.  While under the lodestar method lawyers share the "downside" risk of trial (i.e., the possibility of an adverse judgment, and hence no fee), they do not share in the potential economic "upside" (i.e., fees as a percentage of a large common fund), especially since trial requires comparatively fewer hours than the process of trial preparation.  Although the district court is charged with ensuring the fairness of a proposed settlement, including any lodestar-based attorneys' fee award, this task is often challenging in common fund cases, especially because -- since the attorneys' fees are drawn from a common fund rather than being paid separately by the defendants -- there is little incentive for the defendants to contest the size of the fee.  To the contrary, plaintiffs' and defendants' lawyers share an interest in the approval of an agreed upon settlement.  As a result, the district judge "los[es] the benefit of an adversarial process, which may . . . inform[] and sharpen[] the judicial inquiry."

> But the percentage method has its limitations as well.  As we indicated in *Goldberger*, this Circuit's adoption of the lodestar method was precipitated by the perception that percentage fees "tended to yield too little for the client-class, and an unjustified 'golden harvest of fees' for the lawyer."  Particularly in cases that result in a very large monetary award, the percentage method holds the potential to result in attorneys' fees many times greater than those that would have been earned under the lodestar of hourly rate multiplied by hours worked.  "The principal analytical flaw" in Appellants' argument for a presumptive percentage award as a "benchmark" in common fund cases lies in the "assumption that there is substantial contingency risk in every common fund case" that would justify such a multiplier.

> Moreover, although the percentage method has the advantage of aligning the interests of plaintiffs and their attorneys more fully by

15

allowing the latter to share in both the upside and downside risk of litigation, it can create perverse incentives of its own, potentially encouraging counsel to settle a case prematurely once their opportunity costs begin to rise. And as in the case of the lodestar method, neither defense counsel nor the actual plaintiffs have much of an incentive under the percentage-of-fund approach to oppose an award of attorneys' fees, the latter since "[t]hey have no real incentive to mount a challenge that would result in only a 'minuscule' *pro rata* gain from a fee reduction."

In short, neither the lodestar nor the percentage-of-fund approach to awarding attorneys' fees in common fund cases is without problems. It is for reasons such as those just discussed that in *Goldberger* we declined to "junk" the lodestar method in favor of the presumptive or exclusive use of the percentage method, and instead left the decision as to the appropriate method to "the district court, which is intimately familiar with the nuances of the case." While Appellants assert that there would be a benefit in allowing "district judges . . . [to] step away from the business of analyzing and reviewing attorneys' fee applications," we underscore the importance of the district court's duty "to act as a fiduciary who must serve as a guardian of the rights of absent class members," and reaffirm the requirement of a "searching assessment" regarding attorneys' fees "that should properly be performed in each case." Even were we not bound by Circuit precedent on the matter, we would decline to hold otherwise.

*McDaniel v. County of Schenectady*, 595 F.3d 411, 418-419 (2d Cir. 2010).

Regardless of which method is chosen, courts in the Second Circuit consider the following factors in determining reasonable attorneys' fees: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *Goldberger*, 209 F.3d at 50. The fee requested by Class Counsel is reasonable upon application of the *Goldberger* factors. It is also reasonable when cross-checked using the lodestar method.

**B.**     **The *Goldberger* Factors Show that the Requested Fee Is Reasonable**

          **1.**     **The Time and Labor Expended by Counsel/Magnitude and Complexities of the Litigation**

Class Counsel have vigorously pursued this action over the course of the past year. Class Counsel conducted an extension pre-filing review which included extensive factual and legal analysis of the claims asserted in the Complaint.  During its pendency of the action, Class Counsel aggressively pursued the action by propounding multiple document requests, serving interrogatories and deposition notices.  Class Counsel engaged in extensive meet-and-confer discussions concerning the scope of discovery and filed three motions to compel which were pending at the time the parties reached this Settlement. Additionally, Class Counsel responded to discovery served upon Plaintiff and produced a significant quantity of documents relating to the claims asserted.  Class Counsel also responded to two separate motions to dismiss brought by CONA and COF.  Following the Court's April 8, 2010 order granting in part and denying in part Defendants' motions to dismiss [ECF No. 34], on May 17, 2010, Class Counsel amended the complaint to comply with the Court's opinion.  ECF No. 38.

Class Counsel also engaged in significant and extended settlement discussions and, ultimately, fruitful settlement negotiations with defense counsel over the course of six months.  In all, Class Counsel has spent approximately 850 professional hours, including a significant amount of time which has been expended for the administration of the Settlement.  These lodestar totals do not incorporate the additional time that will expended by Class Counsel to prepare and argue in favor of final approval of the settlement and to work with the Settlement Administrator to prepare distributions of

17

settlement proceeds to Settlement Class members.  The time and effort devoted to this case indicate that the requested fee is within reason.

Additionally, this case presented new and difficult legal issues.  For example, Class Counsel faced the potential challenge of proving which UMFs were charged for mail that was actually deliverable, as opposed to fees that were charged for truly undeliverable mail.  Defendants further claimed that charging UMFs to customers whose mail was truly undeliverable did not constitute a deceptive business practice nor a breach of contract.  In addition, the parties' motion to dismiss memoranda disagreed on the correct legal standard to apply to non-residents under New York GBL §349.  These novel issues contributed to the complexity of the case.  Moreover, CONA and its parent raised novel and difficult defenses related to the Truth in Savings Act and parent/subsidiary liability.  CONA's answers to Plaintiff's original and amended complaints set forth further defenses and affirmative defenses to Plaintiff's claims.

Class Counsel succeeded in obtaining an extremely favorable settlement in this lawsuit.  Both sides in this litigation were represented by sophisticated counsel who strenuously represented their clients.  The resulting arm's-length settlement is a testament to the hard work of all parties to resolve this litigation after over seven months of negotiation.  The benefits to the Settlement Class comprising deposit holders in New York, New Jersey, and Connecticut who were charged or assessed UMFs between January 1, 2007 and November 20, 2009 (the "Class Period") are manifest: not only are members of the Settlement Class entitled to claim up to $2,725,525.51 in UMFs refunds, but the total benefit realized by the Settlement Class ($2,725,525.51 in refunds, approximately $155,000 in settlement expenses, and a requested $750,000.00 in

attorneys' fees and expenses) exceeds 100% of the out-of-pocket damages of Class members.  In addition, during the course of this litigation, CONA stopped charging UMFs to all its customers, saving Settlement Class members potential millions of dollars in future injuries.

Class Counsel litigated this action on a contingency basis.  As a result, they undertook a substantial financial risk.  Throughout the course of this litigation, Class Counsel advanced their own funds and financed the litigation without any promise of payment.  Class Counsel have vigorously and capably represented the Settlement Class in this action.  *See Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358, 372 (S.D.N.Y. 2002) ("'Class counsel undertook a substantial risk of absolute non-payment in prosecuting this action, for which they should be adequately compensated.'"); *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999) (Class counsel not only undertook risks of litigation, "but they advanced their own funds . . . and financed" the litigation.).  The policy was summarized as follows:

> It is therefore imperative that the filing of such contingent lawsuits not be chilled by the imposition of fee awards which fail to adequately compensate counsel for the risks of pursuing such litigation and the benefits which would not otherwise have been achieved but for their persistent and diligent efforts.

*Maley*, 186 F. Supp. 2d at 374.  *See also In re Visa Check/Mastermoney Antitrust Litig*, 297 F. Supp. 2d 503, 524 (E.D.N.Y. 2003) (fees awarded should serve as an "inducement for lawyers to make similar efforts in the future").

The attorneys' fees and costs sought by Class Counsel represent a reasonable return on the investment on their time and effort in securing a positive and lasting outcome for the Class and for future customers of CONA.  Given the tremendous benefits

obtained for the Class and for all customers of CONA, there is no question that the requested fee is fair and reasonable.

### 2.      The Risk of the Litigation

All litigation carries some risk, but class actions carry even more substantial risks than other forms of litigation.  *In re Comverse Tech. Inc. Sec. Litig*, No. 06-cv-1825, 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010).  The Second Circuit is especially cognizant of the risks class counsel accept when they prosecute an action on a contingent fee basis:

> "No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended."

*Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974).

Here, Class Counsel have put in over $470,000 of their own time and money to prosecute this action, all while facing the uncertainty that there would be any recovery for the Class, or any payment for their time and effort.  Class Counsel were aware from the outset that a successful outcome in this case was dependent upon deployment of their firms' resources for months – possibly years – without payment.

Further, while Class Counsel remain confident in the soundness of Plaintiff's claims and strategy, ultimately proving liability was no sure thing.  CONA and its parent successfully achieved dismissal of several claims and of former defendant COF, and CONA continues to deny liability for all remaining claims.  While Plaintiff continues to believe strongly in the merits of his and the Settlement Classes' claims, there is no guarantee that those claims would survive further pretrial motions or that Plaintiff would prevail in the event this case went to trial.  Nor is it guaranteed that even a verdict in

favor of Plaintiff would result in a recovery as favorable to the Class as that achieved in this Settlement.   Despite all this, Class Counsel were successful in obtaining the favorable terms of the Settlement as listed above.

### 3.        The Quality of Representation

In assessing the quality of the representation, courts look to the '"recovery obtained and the backgrounds of the lawyers involved in the lawsuit."'  *Converse*, 2010 WL 2653354, at *6 (quoting *Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 141 (S.D.N.Y. 1998)).   The total value of this settlement consists of benefits claims, awarded legal fees and expenses, and administrative costs.  *See Parker*, 631 F. Supp. 2d at 269.

CONA has agreed to pay $2,725,525.51 in timely and validly submitted claims to the Settlement Class, representing 82% (or more) of the un-refunded UMFs paid by the Settlement Class.   In addition, CONA has agreed to pay settlement notice and administration costs estimated at $155,000.00, as well as attorneys' fees and expenses up to $750,000.00.   Thus, the total recovery is estimated at $3,638,025.51.   This recovery exceeds the $3,323,811.60 in damages actually suffered by the Class – in other words, the recovery is greater than 100% of the out-of-pocket damages suffered by Class members.

Class Counsel and their respective firms are highly experienced law firms with lengthy and successful records of class action litigation.  *See* Plaintiff's Memorandum of Law in Support of Final Settlement Approval at 17, *see also* Tusa Decl. at ¶6; Guglielmo Decl. at ¶2.   The attorneys who participated in this litigation individually have extensive class action experience.   The highly favorable result for the Class is due to the diligence, experience, and hard work of Class Counsel.

#### 4.        The Requested Fee in Relation to the Settlement

Attorneys' fees calculated under the percentage method are ordinarily "expressed as a fraction of a common fund from which the payments to claimants, the cost of administration of the settlement, attorneys' fees and expenses and plaintiff incentive awards are drawn." *Parker*, 631 F. Supp. 2d. at 273.  The fund used is the entire fund available to a settlement class – not merely the portion actually claimed – as the entire fund represents the fruits of counsel's labor.  *See Alleyne v. Time Moving & Storage, Inc.*, 264 F.R.D. 41, 59 (E.D.N.Y. 2010) ("In choosing the proper baseline for calculation of fee percentage, our Circuit case law directs courts to focus on fairly compensating counsel for work actually performed, given that 'the entire fund, and not some portion [of it], is created through the efforts of counsel at the instigation of the entire class.  An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available, whether claimed or not'" (quoting *Wilhelmina Model Agency*, 473 F.3d at 437).

The requested $750,000.00 fee comes to approximately 20.6% of the estimated $3,638,025.51 total fund (including Plaintiff's requested incentive award of $7,500.00). This percentage is both fair and reasonable.  Awards of up to 25% are "well within the range of fees approved by courts in this Circuit and elsewhere."  *In re Telik, Inc. Secur. Litig.*, 576 F. Supp. 2d 570, 587 (S.D.N.Y. 2008).  *In re Sterling Foster & Co., Inc.*, No. 99 cv 2789, 2006 WL 3193744, at *8 (E.D.N.Y. Oct. 31, 2006) (awarding attorneys' fee of approximately 25%).  Indeed, courts in the Second Circuit and throughout the nation have approved fees well in excess of 30% of the total fund.  *Telik*, 576 F. Supp. 2d at 587-88 (collecting cases with fee awards from 30%-45%).  When utilizing the percentage method, courts in this Circuit have awarded fees well-above the percentage requested by

Class Counsel.  *See, e.g.*, *In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 749-50 (S.D.N.Y. 1985) (fees ranging from 20% to 50% common).  The percentage used in determining an appropriate fee "must follow a sliding-scale and must bear an inverse relationship to the amount of the settlement."  *In re Indep. Energy Holdings PLC*, No. 00 Civ. 6689, 2003 WL 22244676, at *6 (S.D.N.Y. Sept. 29, 2003).

### 5. Class Counsel Request a Reasonable Hourly Rate

Here, Class Counsel request a reasonably hourly rate which is supported by the traditional *Goldberger* factors, as discussed more fully herein.  Class Counsel's requested hourly rates are reasonable and at the lower end of the range typically charged by similarly well-qualified counsel in the Eastern and Southern Districts of New York.  *See, e.g.*, *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02 MDL 1484, 2007 WL 313474, at *22 (S.D.N.Y. Feb. 1, 2007) (approving counsel's hourly rates of $850 (partner), $665 (partner), $650 (partner), and $515 (senior associate); *In re KeySpan Corp. Sec. Litig.*, CV 2001-5852, 2005 U.S. Dist. LEXIS 29068, at *45-*47 (E.D.N.Y. Aug. 25, 2005) (partner rates of $580 per hour "fall in the mid to lower end of the spectrum"); *Williamsburg Fair Hous. Comm. v. New York City Hous. Auth.*, 76 Civ. 2125, 2005 U.S. Dist. LEXIS 5200, at *35 (S.D.N.Y. April 4, 2005) ("a recent billing survey made by *The National Law Journal* shows that senior partners in New York City charge as much as $750 per hour and junior partners charge as much as $490 per hour").  Courts in this Circuit have relied on *The National Law Journal* surveys to determine the fairness of fee rates.  *See, e.g.*, *Williamsburg Fair Hous. Comm. v. N.Y. City Hous. Auth.*, No. 76 CIV 2125, 2005 WL 736146, at *12 (S.D.N.Y. Mar. 31, 2005) (relying in part on the 2004 survey:  "a recent billing survey made by the *National Law Journal* shows that senior partners in New York City charge as much as $750 per hour and junior partners

charge as much as $490 per hour"). "In Focus: Billing; Firm-by-Firm Sampling of Billing Rates Nationwide," *The National Law Journal*, Vol. 29. No. 15, Dec. 11, 2006 (noting that partners in New York charge an hourly rate as high as $800 and associates as high as $550). The 2007 *National Law Journal* notes that senior partners at least at one New York City firm charge as much as $1,000 per hour. *See* "Large Firms' Billing Rates Continue to Climb," *The National Law Journal*, Dec. 11, 2007. In 2008, attorney billing rates continued to trend up. *See* "In Focus: Billing; Law Firms Defy Gravity," *The National Law Journal*, Vol. 31, No. 15, Dec. 8, 2008. Average billing rates increased modestly in 2009; "Billing Survey: Reality Dawns on Hourly Rates," *The National Law Journal*, Vol. 32, No. 14, Dec. 7, 2009.

### 6. Public Policy Considerations

The Settlement has produced a tangible recovery for the members of the Settlement Class. As noted above, members of the Settlement Class who make timely and valid claims will recoup $12.30 for every $15.00 UMF, a substantial amount - 82% or more - of their losses from paying UMFs. Further, in the course of this action, CONA has in fact changed its practices regarding UMFs to the benefit of all its current and future customers. The public interest has therefore been served as a result of this litigation. *See Goldberger*, 209 F.3d at 55 ("There is [. . .] commendable sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest.").

### C. The Requested Fee Is Reasonable After Cross-Checking with the Lodestar Method

Courts in the Second Circuit "commonly adhere" to the practice of cross-checking a percentage method award of attorneys' fees against the lodestar method. *Visa*

*Check/Mastermoney Antitrust Litigation*, 297 F. Supp. 2d at 521. Where the presumptively reasonable fee method is "used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized." *Goldberger*, 209 F.3d at 50. "The lodestar cross check need entail neither mathematical precision nor bean counting but instead is determined by considering the unique circumstances of each case." *In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*, 364 F. Supp. 2d 980, 999 (D. Minn. 2005).

In *Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cty. of Albany and Albany Bd. of Elections*, 522 F.3d 182 (2d Cir. 2008), the Second Circuit retired the lodestar approach to determining attorneys' fees and "proposed the use of a modified version of the lodestar approach and recommended abandonment of the term 'lodestar' for the alternative term 'presumptively reasonable fee.'" *McDaniel*, 595 F.3d at 420 (quoting *Arbor Hill*, 522 F.3d at 183). "[T]he Court suggested that a district court's efforts to approximate the reasonable fee that a competitive market would bear-the implicit goal of the lodestar approach-would be better served by considering case-specific 'reasonableness' factors earlier in the calculation." *Id*. Under the lodestar approach, courts "first determine[ed] the lodestar (multiplying an hourly rate by the number of hours worked) and then adjust[ed] the lodestar through a multiplicative factor to account for case-specific considerations." *Id*. Under the presumptively reasonable fee approach, first "a district court should assess case-specific considerations at the outset, factoring them into its determination of a reasonable hourly rate for the attorneys' work." *Id*. (citing *Arbor Hill*, 552 F.3d at 186, 190). Second, the reasonable hourly rate is multiplied by the number of hours worked, generating a "presumptively reasonable fee." *Id*.

Under the first step of the presumptively reasonable fee approach, the traditional *Goldberger* factors are "factored into the appropriate hourly rate." *Id.* at 423; *Bezio*, 655 F. Supp. 2d at 168 (under the presumptively reasonable fee approach, the court should look to the traditional *Goldberger* factors).

Class Counsel have spent a total of 850 hours to date on this suit. The resulting lodestar is $463,733.00. The $750,000.00 fee requested represents a multiplier of approximately 1.62 against Class Counsel's lodestar. Courts in this Circuit commonly employ multipliers of 2 to 6. *deMunecas v. Bold Food, LLC*, No. 09 Civ. 00440, 2010 WL 3322580, at *10 (S.D.N.Y. Aug. 23, 2010); s*ee also Dupler*, 705 F. Supp. 2d at 245 (approving multiplier of 3.3 where attorneys' fees did not come out of common fund); *In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510, 2007 WL 2743675, at *17 (E.D.N.Y. Sept. 18, 2007) (collecting cases with multipliers up to 3.96). A multiplier in this case of 1.62 shows that the requested fee should be approved as it is clearly reasonable under the lodestar cross-check and falls within the range that courts within this Circuit have approved.

### D.       Response of the Class to the Requested Attorneys' Fee

To date, over 43,000 copies of the Court-approved Notice have been sent to members of the Settlement Class. The Notice disclosed the $750,000.00 in attorneys' fees and costs sought by Class Counsel. No objections to Class Counsel's requested fee were filed. The fact that no objections have been lodged is a testament to the reasonableness of the Settlement and the fee requested.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant Class

Counsel's request for the payment of attorneys' fees and reimbursement of costs in the

aggregate amount of $750,000.00.

Dated this 29th day of November, 2010.

SCOTT+SCOTT LLP

  /s/ Joseph P. Guglielmo
Joseph P. Guglielmo (JG 2447)
500 Fifth Avenue, 40th Floor
New York, NY 10110
Tel. (212) 223-6444
jguglielmo@scott-scott.com

WHALEN & TUSA, P.C.
Joseph S. Tusa (JT 9390)
33 West 19th Street, 4th Floor
New York, NY 10011
Tel. (212) 400-7100
joseph@whalen-tusa.com

TUSA, P.C.
Joseph S. Tusa (JT 9390)
236 East 28th Street, #3C
New York, NY 10016
Tel. (646) 895-9802
joseph.tusapc@gmail.com

*Plaintiff's Counsel and Class Counsel*